ORMOND E. CHAMBERS v. UNION OIL COMPANY, INC., EMPLOYER, AND MARYLAND CASUALTY COMPANY, CARRIER.

(Filed 16 June, 1930.)

1. **Master and Servant F b—Ordinary risks from close economic contact of workers are assumed by employer under Workmen's Compensation Act.**

   In construing section 2(f) of the North Carolina Workmen's Compensation Act the words "arising out of the employment" in regard to injuries compensable is broad and comprehensive, and must be determined in the light and circumstances of each case, and the act, applying only to industries employing more than four workmen, contemplates the gathering together of workmen of varying characteristics, and the risks and hazards of such close contact, joking and pranks by the workmen, is an incident to the business and grow out of it, and is an ordinary risk assumed by the employer under the act.

2. **Same—In this case held: finding by Commission that injury arose out of employment was supported by evidence and is conclusive.**

   Where there is evidence that the driver of the employer's oil truck habitually carried a pistol in order to protect his employer's property, and that the employer acquiesced therein, and that the plaintiff was injured while filling a fuel tank in the course of his employment by the accidental explosion of the pistol carried by the driver when the driver threw it back into his truck after he and the plaintiff had joked about whether the pistol would shoot: *Held*, the evidence discloses that the injury arose out of the employment and is sufficient to support the finding of fact by the Industrial Commission to that effect, which is conclusive and binding on appeal. Section 60, Workmen's Compensation Act.

3. **Same—Where workman does not participate in horse-play causing his injury he is not precluded from recovering therefor.**

   If an employee is injured as a result of the horse-play of a fellow-workman the injured employee is not precluded from recovering his damages under the Workmen's Compensation Act if he did not participate therein.

CIVIL ACTION, before *Sink, Special Judge,* at April Term, 1930, of BUNCOMBE.

The plaintiff filed a claim with the Industrial Commission for compensation for an injury resulting from the accidental discharging of a pistol. Compensation was awarded by Commissioner Allen, and the defendants appealed to the Full Commission where the award was affirmed. Thereupon the defendants appealed to the Superior Court of Buncombe County. The trial judge, after hearing the cause, entered a decree "that the judgment and award of the Industrial Commission heretofore made be and the same hereby is in all respects affirmed."

The opinion by Commissioner Allen is set out in full in the record. The facts are substantially as follows: "The defendants were wholesale distributors of oil and employed the plaintiff and P. E. Loven as truck drivers to deliver oil. These drivers collected money as sales were made, and sometimes carried as much as $800. Previous to the injury complained of Loven had been held up on one of his trips and either robbed or an attempt was made to rob him. Thereafter Loven carried a pistol for the protection of his employer's property. Parker, vice-president of the defendant, thought the drivers were carrying pistols, but had no positive knowledge of that fact.

"On 7 September, 1929, the plaintiff was filling a fuel tank on a truck driven by him. The truck driven by Loven was also near the tank. Loven went to his truck to get his order book, which was in the pocket of the truck under his pistol. Loven took the pistol out of the truck and plaintiff asked him where he was going with 'that old smoke pole,' and that 'that gun won't shoot.' Thereupon Loven threw the pistol back into the truck and it accidentally discharged, the bullet entering plaintiff's foot."

There was also evidence that Loven went over to where plaintiff was at work for the purpose of showing him the pistol, and they were standing side by side when the pistol discharged. All the evidence was to the effect that the pistol discharged accidentally.

The pertinent portions of the findings of fact by the Industrial Commission are as follows: "From a consideration of all the evidence the Commissioner finds that the plaintiff sustained an injury on 7 September, 1929, which injury arose during the course of the employment; that the employer had not forbidden the carrying of pistols by its truck drivers, but in fact thought pistols were being carried by them; that inasmuch as the employer thought the drivers were carrying pistols and took no action to discourage the practice is tantamount to sanctioning such practice, and that by such sanction the ordinary dangers from such use of pistols became a hazard incident to the plaintiff's employment, hazards to which the general public is not exposed, that the accident

arose out of the employment, therefore, as well as in the course of the employment; that the burden was upon the defendants to prove the alleged 'horse-play' which consists of 'sky-larking' or 'sportive acts'; that the defendants have failed to establish the fact of 'horse-play'; that at the time of the accident neither the plaintiff nor Loven had abandoned his employment; that by the greater weight of the evidence the plaintiff has met all of the requirements of the North Carolina Workmen's Compensation Act, and is entitled to recover. It is admitted in this case that claimant was at all times during the conversation between himself and his coemployee, actually engaged in the filling of a tank with oil, so it cannot be said by any view of the evidence that claimant participated in any kind of sky-larking or play," etc.

From judgment rendered by the Superior Court the defendants appealed.

*Lee & Lee for plaintiff.*
*J. M. Horner, Jr., for defendants.*

BROGDEN, J. Two questions of law are presented for decision:

First, did the injury to plaintiff arise out of and in the course of the employment?

Second, if the injury was the result of horse-play, is the plaintiff entitled to compensation?

The first question of law involves a construction of section 2(f) of the Compensation Act. The section reads as follows: "Injury and personal injury shall mean only injury by accident arising out of and in the course of employment and shall not include disease in any form, except where it results naturally and unavoidably from the accident."

The record in the case at bar discloses that the plaintiff was injured while actually engaged in the proper performance of his work. Hence it must be conceded that the injury was sustained while he was "in the course of the employment." The term "arising out of the employment" is broad and comprehensive and perhaps not capable of precise definition. It must always be interpreted in the light of the facts and circumstances of the given case. Usually the courts have insisted that there must be some causal connection between the injury and the employment. However, the basic idea of the term is that the employment of workers in industry creates certain risks to which the employees are subjected in the performance of their duties. It is apparent that the risk of one employment would differ from the risk of another employment, and, therefore, no iron rule of liability can be applied in all cases.

The Compensation Act does not apply to any industry employing less than five workmen, and hence the act itself contemplates that successful industrial operation presumes the assembling of workers in one place

who are engaged in various phases of the general prosecution of the business. It is a self-evident fact that men required to work in daily and intimate contact with other men are subjected to certain hazards by reason of the very contact itself because all men are not alike. Some are playful and full of fun; others are serious and diffident. Some are careless and reckless; others are painstaking and cautious. The assembling of such various types of mind and skill into one place must of necessity create and produce certain risks and hazards by virtue of the very employment itself. This idea was expressed by the Supreme Court of New Jersey in *Hulley v. Moosbrugger,* 93 Atlantic, 79. In that case the claimant went to his employer's shop to get certain pipe fitting when a fellow-workman in a spirit of play swung his arm around either to knock off decedent's hat or strike him, whereupon the decedent in dodging the attack slipped on the descending concrete floor, fell and sustained injury which caused his death. The Court said: "In the case under consideration, it appears that the prosecutor employed young men and boys. It is but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow-workman is a matter of common knowledge to every one who employs labor." While this case was reversed upon the ground that the injury "was a result of horseplay or sky-larking," the fact remains that the bulk of normal American workmen possess a stratum or residuum of vivacity and good nature which frequently manifests itself in joking and harmless pranks. These things are not unnatural, but natural and the ordinary outcropping of industrial contact between men of all classes and types. Such risks, therefore, are incident to the business and grow out of it. In an ordinary suit for damages for personal injury the workman assumes the ordinary risks of the business, but the Compensation Act in such case imposes the ordinary risk of the business upon the employer. That is to say, the employer and not the workman must assume the ordinary risks of the business or employment.

In the case at bar, the injured workman was attending to the duties of his employment. A fellow-workman stepped aside for a moment to show him a pistol. The pistol had been carried habitually by the workman in order to protect his employer's property from robbery, and the employer testified: "I never said anything to my drivers about carrying weapons. . . . I will say that I thought they had them, but I had no definite knowledge of it. I knew of the fact that one of my drivers had been held up. He reported that to me." Certainly the testimony of the employer was some evidence of acquiescence in the habit of carrying weapons, indulged in by the drivers. Moreover, the Industrial

Commission has found as a fact that the accident arose out of the employment, and there was evidence to support such finding. Hence under section 60 of the Compensation Act, the award of the Commission is "conclusive and binding as to all questions of fact."

The second question of law presented by the appeal involves the application of the so-called doctrine of "horse-play" or "sky-larking." This principle is based upon the idea that if a workman is injured while engaged in play, or for an instant steps out of the line of his regular duties to communicate with a fellow-employee, he is not entitled to compensation, irrespective of whether he participated in the play or prank. The authorities bearing upon the subject are assembled in 13 A. L. R., 540; 20 A. L. R., 882; 36 A. L. R., 1469; 43 A. L. R., 492, and 46 A. L. R., 1150. The author of the annotation in 13 A. L. R., 540, says: "It is generally held that no compensation is recoverable under the Workmen's Compensation Acts, for injuries sustained through horse-play or fooling which was done independently of and disconnected from the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the acts." Numerous cases are cited from various jurisdictions in support of the principle of law so announced. In the same note the author continues the discussion as follows: "But in a number of cases an exception to the general rule has been recognized, and the right to compensation sustained, where an employee, who was injured through horse-play or fooling by other employees, took no part in the fooling, but was attending to his duties." Numerous cases are cited in support of this proposition.

A few of the cases illustrating the doctrine may not be amiss. For instance, in the case of *Leonbruno v. Champlain Silk Mills,* 128 N. E., 711, an employee, while engaged in the line of his duty, was struck in the eye by an apple thrown by a fellow-servant engaged in horse-play. The Court of Appeals of New York held that the injury was compensable. In *Cassell v. U. S. Fidelity & Guaranty Co.,* 283 S. E., 127, the plaintiff was engaged in his regular duties as a stage hand. The stage manager came upon the scene and in fun snapped a pistol supposed to be unloaded, at other employees and at Cassell when the pistol fired and injured plaintiff. Pistols were kept for use during theatrical performances, but there was no practice of playing with pistols which had been acquiesced in by the employer. Upon such state of facts the Supreme Court of Texas held that the plaintiff was entitled to compensation.

Indeed, if a workman be denied compensation solely upon the ground that he was injured by the "sportive act" of a fellow-workman, it would seem to be clear that the old "fellow-servant" doctrine is appearing in a brand-new suit of legal clothes and parading through the law under the brand-new name of "horse-play."

It is generally conceded by all courts that the various compensation acts were intended to eliminate the fault of the workman as a basis for denying recovery. In other words, a workman is entitled to recover irrespective of fault if the injury arises out of and in the course of the employment. · The doctrine of horse-play, which excludes a workman from compensation, although he is not at fault, and does not engage therein, is inconsistent with the underlying philosophy of compensation acts, which are designed for the very purpose of eliminating fault as a basis for determining liability.

We are therefore of the opinion and so hold: First, that the evidence discloses that the claimant sustained an injury arising out of and in the course of his employment. Second, that if he was injured as a result of horse-play, he did not participate therein; and, therefore, he is not precluded from recovery. The judgment of the trial court is

Affirmed.