NEILL MacRAE, Employee, v. UNEMPLOYMENT COMPENSATION COMMISSION OF NORTH CAROLINA, Employer.

(Filed 19 June, 1940.)

1. **Master and Servant § 40b—Evidence held to sustain finding that contraction of tuberculosis resulted from accident within meaning of Compensation Act.**

   The evidence tended to show that defendant's employees were crowded into inadequate office space, that claimant was required to work at the same desk with a fellow employee who, it was later ascertained, was then suffering with active tuberculosis, that the fellow employee involuntarily and unexpectedly coughed directly into claimant's face, and that as a result thereof claimant who had theretofore been healthy, contracted tuberculosis resulting in the disability in suit.   *Held:* Such coughing was untoward, unfortunate and unusual in its proximity to and its effect upon claimant, and constituted an "accident" and the evidence is sufficient to support the finding of the Industrial Commission that claimant's disease resulted "naturally and unavoidably from an accident"; Michie's Code, sec. 8081 (i), subsec. (f), arising out of and in the course of the employment.

2. **Same—Sec. 50½ (a) of the Compensation Act relates only to diseases inherent in or incident to the nature of the employment.**

   Chapter 123, section 50½ (a), Public Laws of 1935, providing that only the occupational diseases therein specified should be compensable, relates only to occupational diseases, which are those resulting from long and continued exposure to risks and conditions inherent and usual in the nature of the employment, and this section does not preclude compensation for a disease not inherent in or incident to the nature of the employment when it results from an accident arising out of and in the course of the employment, Michie's Code, 8081 (i), subsec. (f).

3. **Master and Servant § 55d—**

   If a finding of fact by the Industrial Commission is supported by competent evidence the finding is conclusive notwithstanding that other evidence may have been admitted which might be objectionable under technical rules of evidence appertaining to courts of general jurisdiction.

25—217

**4. Master and Servant § 52b—**

Expert opinion evidence as to the manner in which claimant contracted the disease resulting in disability *held* to have been elicited by hypothetical questions assuming only such facts which the evidence directly, fairly and reasonably tended to show, and the expert testimony was competent.

**5. Master and Servant § 52c—**

Findings of fact by the Industrial Commission may be based on circumstantial as well as direct evidence.

BARNHILL, J., dissenting.

STACY, C. J., and WINBORNE, J., concur in dissent.

APPEAL by defendant from *Williams, J.,* at January Term, 1940, of WAKE. Affirmed.

This is an action brought by plaintiff against defendant, under the N. C. Workmen's Compensation Act (Laws 1929, ch. 120; N. C. Code, 1939 [Michie], ch. 133-A).

The hearing Commissioner found certain facts and made an award as follows:

"The Commissioner finds as a fact from the evidence and admissions that both the plaintiff and the defendant are bound by the provisions of the North Carolina Workmen's Compensation Act, the defendant having five or more employees; and that the defendant is both a governmental and State Agency; and that the plaintiff's average monthly wage was $75.00. The Commissioner finds as a fact that the Unemployment Compensation Commission has its offices over the Sir Walter Garage on Fayetteville Street, in the city of Raleigh, and that the space occupied by the Unemployment Compensation Commission is inadequate for the work to be done and for the several hundred employees that are required to occupy it. The Commission further finds as a fact that among these numerous employees for several weeks prior to 1 February, 1939, was a young man, by the name of Frank Tyson, and the plaintiff, Neill MacRae, both of whom were young men; that during the month of February, 1939, these two young men were placed across a very narrow table or desk to do their work; and the Commissioner further finds that during the month of February, 1939, the said Frank Tyson was suffering from an active case of pulmonary tuberculosis, and that they had to work in such close proximity to each other that when the said Frank Tyson coughed—which he did frequently—the vapors and sprays from his mouth would fly into the face of the plaintiff, Neill MacRae; and that on one occasion, on or about the 15th day of February, 1939, that the said Frank Tyson coughed while suffering with an active pulmonary tuberculosis and that some of the sputum from his cough flew into the mouth of the plaintiff, Neill MacRae; that thereafter, on or about the 26th day of February, 1939, the said Frank Tyson became disabled on

account of his pulmonary tuberculosis, that he was carried to one of the tubercular sanatoriums in the State where he is now undergoing treatment for said condition.

"The Commissioner further finds that prior to the association of the plaintiff, Neill MacRae, with the said Frank Tyson, he was not known to have had any tuberculosis; that after the said Frank Tyson was removed from the employment of the Unemployment Compensation Commission, the plaintiff, Neill MacRae, continued to work on until some time in the latter part of April, or the first part of May he began to notice night sweats and have sleepless nights; and in the early part of June, upon examination, he was found to be suffering with tuberculosis. The Commissioner finds as a fact from the evidence that from the time the plaintiff was exposed to tuberculosis from Frank Tyson until the latter part of April or the first part of May was ample time for tuberculosis to develop from the inception of the tubercular germs. The Commissioner further finds as a fact that the reception of spray from the coughs of Tyson—who was known to be infected with tuberculosis—and especially the sputum that went into the mouth of the plaintiff in this case was ample exposure to pass the germs from one person to another.

"The Commissioner further finds as a fact that the plaintiff, Neill MacRae, became totally disabled to work on June 10, 1939, and is still totally disabled to work on account of tuberculosis. The Commissioner finds as a fact from the evidence and the greater weight of the evidence that the reception of the sputum sprays and the sputum itself from the mouth of Tyson into the face and mouth of the plaintiff was the cause of the development of the tuberculosis in the plaintiff; and, the Commissioner further finds as a fact that the reception of said spray and sputum flying through the air, under the circumstances as described in the evidence in this case, amounted to an injury by accident.

"Therefore, the Commissioner finds as a fact that the plaintiff received an injury by accident arising out of and in the course of his employment for the defendant, and that as a result of said injury he developed tuberculosis; and that he has been totally disabled from carrying on any labor on account of said condition since June 10, 1939; that he is in need of hospital and medical care. . . . Therefore, let an award issue directing the defendants to pay to the plaintiff compensation for total disability from June 10, 1939, until the time of this hearing based upon an average wage of $75.00; and, if the plaintiff and the defendants cannot agree on the period of disability thereafter then the case will be reset for a further hearing for that purpose.

"Defendants will tender to the plaintiff hospital and medical treatment such as his condition may require and pay the bills therefor when approved by this Commission. Defendants will pay the costs of the hear-

ing. Each of the plaintiff's doctors who testified at the hearing is allowed a fee of $10.00. Buren Jurney, Commissioner."

To the findings of fact and conclusions of law of the hearing Commissioner, defendant excepted, assigned error and appealed to the Full Commission. The Full Commission affirmed the findings of fact and conclusions of law and award of the hearing Commissioner.

In the judgment of the Full Commission, in part, is as follows: "The defendant contends that the plaintiff is disabled as the result of diseased condition and that this disease is not one of those listed under section 50½ (b) of the Compensation Law, and further plead section 50½ (a), which reads, in part: 'The disablement or death of an employee resulting from an occupational disease described in paragraph (b) of this section shall be treated as the happenings of an injury by accident within the meaning of the North Carolina Workmen's Compensation Act and the procedure and practice and compensation and other benefits provided by said act shall apply in all such cases except as hereinafter otherwise provided. The word "accident" as used in the Workmen's Compensation Act, shall not be construed to mean a series of events in employment, of a similar or like nature, occurring regularly, continuously or at frequent intervals in the course of such employment, over extended periods of time, whether such events may or may not be attributable to fault of the employer, and disease attributable to such causes shall be compensable only if culminating in an occupational disease mentioned in and compensable under this act. . . .'" Laws 1935, ch. 123, sec. 1.

To the foregoing opinion of the Full Commission, the defendant excepted, assigned error and appealed to the Superior Court. The judgment of the Superior Court is as follows:

"This cause coming on to be heard before his Honor, Clawson L. Williams, Judge presiding, at the January, 1940, Term of Wake County Superior Court, by consent of the parties upon appeal of the defendants from the award, opinion and findings of fact of the Full Industrial Commission of North Carolina, and upon a record certified to this court by the Industrial Commission, and after argument of counsel and consideration of the evidence and record herein, and it appearing to the court that the findings of fact, award, and opinion of the Full Industrial Commission is amply supported by competent evidence, that plaintiff's disability and disease complained of herein resulted naturally and unavoidably from an accident arising out of and in the course of plaintiff's employment by defendant, and that defendants' questions to medical experts as appear in the record were properly overruled by the Industrial Commission:

"It is therefore considered, ordered and adjudged and decreed that the findings of fact, award, and conclusions of law of the North Carolina

Industrial Commission as set forth in the opinion of said Commission appearing in the record, be and the same are hereby in all respects approved and affirmed; and that plaintiff have and recover of the defendant the amounts and compensation as set forth in the award of the Industrial Commission, together with the costs of these proceedings of this action; and it is further ordered that the costs of these proceedings to the plaintiff, including reasonable attorneys' fees to be determined by the Industrial Commission, shall be paid by the defendant as part of the bill of costs herein, in accordance with section 8081 (rrr) of the North Carolina Workmen's Compensation Act. This 24th day of January, 1940. Clawson L. Williams, Judge presiding."

To the foregoing judgment, findings and ruling of the court below, the defendant excepted, assigned error and appealed to the Supreme Court.

Dr. J. J. Combs, admitted to be an expert, testified, in part: "I examined MacRae on July 7, 1939, as the result of my findings and examination my conclusion is that his disability is pulmonary tuberculosis. It is my opinion he has tuberculosis. . . . I have found in my experience that a person exposed, say in February, could break down with tuberculosis in two or three months after that. If he was exposed to tuberculosis and had not been exposed until about the middle of February, then the condition you found him with would not be inconsistent with that exposure. I might cite a case. A patient was admitted to the sanatorium about March 15, 1938, a colored man, for advanced tuberculosis. His wife was brought in subsequent to his admission and fluoroscoped and I could find no evidence of tuberculosis. The last of May, 1938, the patient came in with far advanced, rapidly advancing tuberculosis. Now, I attributed it to the exposure to her husband. Neill's condition could be attributed to exposure about the middle of February."

The following question was asked Dr. Combs: "Q. I'll ask you a hypothetical question, Doctor. Doctor, if the Commission should find as a fact from the evidence presented in this case that Neill MacRae was a man about 22 years of age, normal health and habits, in good physical condition throughout his life, weighing on an average of about 145 pounds, that in connection with his employment in the office of the Unemployment Compensation Commission in Raleigh he worked during part of the time upon various occasions with one Frank Tyson who developed symptoms of tuberculosis in the form of coughing and other symptoms during February, 1939, and by examination about February 28th, March 1st, 2nd and 3rd, 1939, Frank Tyson was found to have a very highly active case of pulmonary tuberculosis and his sputum at those times contained tubercular bacilli, that about the middle of Febru-

ary, 1939, while Neill MacRae was working with said Tyson in the course of said employment, said Tyson unexpectedly and involuntarily coughed direct into the face of Neill MacRae, expectorating sprays or sputum into MacRae's mouth, that about the latter part of April and the first part of May, 1939, Neill MacRae began to feel fatigue easily, he experienced night sweats during the first part of May at intervals, which continued at more frequent intervals during May, 1939; that MacRae experienced some fever and high temperature during May and developed a nonproductive cough in the first part of May, continuing and increasing in severity during that month; that he was found to have pulmonary tuberculosis by examination about June 5, 1939, which now disables him, and which is of the same type, and nature and character of the disease from which Tyson was found to be suffering, would you or do you have an opinion satisfactory to yourself based upon such findings, with no history of exposure of MacRae to other persons as to whether or not Neill MacRae's present disability and disease is attributable and resulted naturally and unavoidably from Tyson's coughing into MacRae's face as described? Q. Do you have an opinion? Ans.: Yes, sir, my opinion is that Mr. MacRae's present condition, chronic pulmonary tuberculosis, is attributable to his exposure to Mr. Frank Tyson while at work in view of the fact that there is no other history of contact. Q. And as described in the question? Ans.: Yes, sir."

Dr. Earl W. Brian, an expert, testified, as did Dr. Combs, to a like hypothetical question: "Q. Do you have an opinion? Ans.: Yes, sir. Q. What is your opinion? Ans.: My opinion is that MacRae contracted his tuberculosis from Frank Tyson as a result of his working in close proximity with Tyson. . . . Q. Do you think the sputum that went into his mouth and the sprays that went into his face caused it? Ans.: You are trying to make the point that this one particular cough produced the disease in MacRae. Q. Based upon those findings and remembering the facts, I am trying to clarify it. Ans.: Yes, sir, I think he got his tuberculosis as a result of Tyson's coughing in his face or near enough for him to inhale the organisms. . . . Q. What effect does the lack of ventilation or air flow or flow of air current in a room in which a tubercular patient is present with other healthy persons have in the transmittal of the disease germs of tuberculosis from one person to another. Ans.: The course given to people in a room, one infected with tuberculosis and the other free, the infected person coughing, if the air is being continually swept away there is much less likelihood of the uninfected person developing the disease than if the air is, shall we say stagnant, not being swept away, certainly the presence of still air would be in favor of developing the disease in the uninfected person."

The hypothetical questions were based on the examination of Neill

MacRae by the above physicians, also on their testimony, and other evidence. The testimony of Neill MacRae was corroborated by Mrs Ellen MacRae, Mrs. Thomas O'Berry, Mrs. Alice Smith and Mrs. Irene S. Burns. The main exceptions and assignments of error made by defendant and other necessary facts will be set forth in the opinion.

*Smith, Leach & Anderson for plaintiff.*
*Adrian J. Newton, Ralph Moody, and J. C. B. Ehringhaus, Jr., for defendant.*

CLARKSON, J. The question involved: Does the record contain any competent evidence sufficient to sustain the finding of the Full Commission that the plaintiff received an injury by accident arising out of and in the course of his employment by defendant? We think so.

N. C. Code, 1939 (Michie), sec. 8081 (i), subsec. (f), is as follows: " 'Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

We think plaintiff's disease is the result of an injury by accident within the meaning of subsection (f), *supra,* of the act. It is not an occupational disease. The occupational disease section of the Compensation Act, Laws 1935, ch. 123, sec. 50½ (a), applies only to diseases which result from the cumulative effect of long, continued exposure to risks and conditions inherent and usual in the nature of the employment.

The language of the occupational disease section of the act, sec. 50½ (a), is heretofore set forth in the opinion of the Full Commission, as relied on by defendant to defeat plaintiff's claim. We have gone into the question of occupational disease in the recent case of *Blassingame v. Asbestos Co., ante,* 223. The hearing Commissioner found, and there was competent evidence to sustain the findings: "The Commissioner finds as a fact from the evidence and the greater weight of the evidence that the reception of the sputum sprays and the sputum itself from the mouth of Tyson into the face and mouth of the plaintiff was the cause of the development of the tuberculosis in the plaintiff; and, the Commissioner further finds as a fact that the reception of said spray and sputum flying through the air, under the circumstances as described in the evidence in this case, amounted to an injury by accident." This finding was affirmed by the Full Commission, who also found: "In the instant case, the Commission is of the opinion that the coughing and the sputum accidentally hitting the plaintiff and entering his mouth constitutes an injury by accident."

In *Smith v. Creamery Co., ante,* 468, the evidence tended to show that the injured employee was employed to deliver milk, that in delivering

milk to a cafe in the regular course of his employment he attempted to
lift a box containing chipped ice, and weighing from 125 to 150 pounds,
out of a large box in order to place the milk he was delivering beneath
it, that while lifting the box he felt a sharp pain and that it was later
determined that he had suffered a hernia. The clear and well written
decision by *Mr. Justice Seawell* says: "The Court certainly does not
intend to say that compensation may be awarded for an injury which is
not the result of fortuitous circumstances or for an injury which is but
the natural and probable result of the employment. We only go so far
as to hold that in considering the constituent element of 'accident' it is
competent to take into consideration the sudden and unexpected rupture
of the parts supporting the viscera, as happened to the plaintiff, under
the strain of lifting, as part of the fortuitous circumstances making up
the accident. It was not, as in *Slade v. Hosiery Mills, supra* (209
N. C., 823), and *Neely v. Statesville, supra* (212 N. C., 365), a natural
and probable result of the work being done, and the facts of the case
justified the finding on the part of the Commission, as affirmed by the
court, that plaintiff sustained his injury by accident arising out of and
in the course of his employment."

We think the above case is analogous to the present action. It was
in evidence that Frank Tyson, who had a very highly active case of
pulmonary tuberculosis and his sputum at those times contained tuber-
cular bacilli, about the middle of February, while Neill MacRae was
working with said Tyson in the course of said employment, said Tyson
unexpectedly and involuntarily coughed directly into the face of Neill
MacRae, expectorating sprays or sputum into MacRae's mouth. Almost
immediately thereafter the plaintiff, a strong, healthy young man, com-
menced to have bodily fatigue and went down and down, and on 5 June
of that year was found to have pulmonary tuberculosis.

Dr. Brian testified, in part: "Q. Do you have an opinion? Ans.:
Yes, sir. Q. What is your opinion? Ans.: My opinion is that MacRae
contracted his tuberculosis from Frank Tyson as a result of his working
in close proximity with Tyson. . . . At any time any patient is
coughing up tuberculosis bacilli, another patient may get the disease
from him. . . . I'd classify tuberculosis as a communicable infec-
tious disease. It is communicated from one person to another by physical
conditions. The reception into the body of sputum containing tubercu-
lar bacilli is the most favorable medium of transmitting the disease."

Plaintiff's tubercular disability is directly attributable to his infection
when Tyson involuntarily and unexpectedly coughed spray and sputum
into plaintiff's face and mouth. Such coughing was untoward, unfor-
tunate and unusual in its proximity to and its effect upon plaintiff. It
was unintentional and the result of Tyson's negligent failure or inability

to protect himself therefrom because both hands were engaged in holding a tray. Yet, by the simple act of placing a handkerchief or hand over his mouth, Tyson might have prevented the spread of the spray and sputum. This overt, positive action is sufficient to satisfy the definition of accident. Injuries resulting from either willful or negligent actions of a fellow employee constitute injuries by accident. *Conrad v. Foundry Co.*, 198 N. C., 723; *Chambers v. Oil Co.*, 199 N. C., 28; *Tscheiller v. Weaving Co.*, 214 N. C., 449.

The Court, in *Barron v. Texas Employers Insurance Assn.*, 36 S. W. (2d), 464 (Texas, 1931), held that exposure of a workman to gas emitted by an oil well "in quantities somewhat larger than the gas to which he had previously been exposed, constituted an injury by accident." The workman became weak and nauseated from the exposure and suffered pains in his lungs, and later he was found to have tuberculosis. In the opinion of the Court it was said, at p. 465: "A disease acquired in the usual and ordinary course of employment which common experience has recognized to be incidental thereto is an occupational disease and not within the contemplation of the Workmen's Compensation Act; but an injury resulting from the accident is something which occurs unexpectedly and not in the natural course of events. It is one which may possibly be prevented by the exercise of due care and caution on the part of the employer. Schneider on Compensation Laws, p. 419, sec. 223; *Gay v. Hocking Coal Co.*, 184 Iowa, 949, 169 N. W., 360." . . . Further in the opinion (at p. 467), "A disease contracted as a direct result of unusual conditions connected with the work and not as an ordinary or reasonably to-be-anticipated result of pursuing the same should be considered an accidental injury."

To the same effect is *Ætna Life v. Harris*, 83 S. W. (2d), 1087 (Texas, 1935).

In *Dove v. Alpena Leather Co.*, 164 N. W., 253 (254), (1917), the Michigan Court upheld an award where the plaintiff became infected with a disease as the result of inhaling germs while handling hides in a poorly ventilated room. In the opinion it is said: "The accidental feature of this case is that by chance the septic germ or germs were taken into the respiratory organs and carried into his system, which . . . was unusual in the work at which he was engaged." *Connelly v. Furniture Co.*, 240 N. Y., 83, 147 N. E., 366, 39 A. L. R., 867; *Claess v. Dolph*, 161 N. W., 885 (Mich.).

We think the exceptions and assignments of error made by defendants to the evidence are not material. In *Tindall v. Furniture Co.*, 216 N. C., 306 (310), it was said by *Devin, J.*, for the Court: "In accord with the provisions of the Workmen's Compensation Act, it has been established by the uniform decisions of this Court that the findings of

fact made by the Industrial Commission, when supported by competent evidence, must be held conclusive on appeal, and not subject to review. *Lassiter v. Telephone Co.*, 215 N. C., 227; *Porter v. Noland Co.*, 215 N. C., 724; *Plyler v. Country Club*, 214 N. C., 453. And the application of the rule of conclusiveness of the findings of the Industrial Commission as to controverted issues of fact, when based on competent evidence, is not defeated by the fact that some of the testimony offered may be objectionable under the technical rules of evidence appertaining to courts of general jurisdiction, as was pointed out in *Maley v. Furniture Co.*, 214 N. C., 589, and *Consolidated Edison Co. v. National Labor Relations Board*, 305 U. S., 197."

We think the hypothetical questions within the rule frequently approved by this Court; they "assume facts which the evidence directly, fairly and reasonably tends to establish, and were competent. The probative force was for the Commission." *Blassingame v. Asbestos Co., ante*, 223 (236).

We think that plaintiff's disease was proximately produced by infection from germs transmitted him in droplets of spray and sputum coughed up and expectorated into his face and mouth by a negligent fellow employee in the course of his employment by defendant; that the unusual circumstances and conditions under which said injury was produced constituted an accident arising out of his employment; and that the evidence fully supports the Commission's findings and award. It is well settled law that the Commission could base its findings of fact on circumstantial as well as direct evidence.

In II Schneider, Workmen's Compensation Law (2d Ed.), part sec. 554, at pp. 2002-3, we find: " 'The courts may not interfere with the findings of fact, made by the Industrial Commissioner, when these are supported by evidence, even though it may be thought to be error.' 'The rule . . . is well settled to the effect that, if in any reasonable view of the evidence it will support, either directly or indirectly, or by fair inference, the findings made by the Commission, they must be regarded as conclusive' (citing a wealth of authorities). Courts cannot demand the same precision in the finding of Commission as otherwise might be if the members were required to be learned in the law.' " This statement was quoted with approval in *Blassingame v. Asbestos Co., supra* (233-4).

For the reasons given, the judgment of the court below is
Affirmed.

Barnhill, J., dissenting: The original Workmen's Compensation Act, ch. 120, Public Laws 1929, in sec. 2 (f) thereof, defines "injury" and "personal injury." The definition provides that the terms *"shall not include a disease in any form,* except where it results naturally and unavoidably from the accident."

Under this provision "injury by accident" and "disease" are not synonymous but the terms are used in contrast to each other. If the framers of the act had intended disease, that is, where the disease is the injury itself, to have been included it would not have been necessary to have added the last clauses in the section and they are mere surplusage.

"Injury" in its broadest sense, perhaps, would include injury by disease. But the Legislature expressly excludes this interpretation. To be compensable the disease must naturally and proximately follow injury by accident. There must be first an injury by accident from which disease develops before there can be any compensation; that is, the injury by accident must precede the disease and be its producing cause. *Richardson v. Greenburg,* 176 N. Y. Supp., 651; *Meade Fibre Corp. v. Starnes,* 247 S. W. (Tenn.), 989; *Hendrickson v. Continental Fibre Co.,* 136 Atl. (Del.), 375; *Blair v. Ice & Storage Co.,* 165 N. W. (Neb.), 893, 11 A. L. R., 792. The Industrial Commission adopted this view in *Stewart v. Rainey Hospital.* See opinions of Industrial Commission II, 125.

The express mention of a disease which is the consequence of an injury would seem to exclude all other diseases which are not. Thus if an employee suffers a traumatic injury by accident arising out of and in the course of his employment and pneumonia naturally and proximately results, the injured employee would be entitled to compensation for disablement produced by the disease *as a part of the result of the injury.* But the essential link between the injury and the disease must be shown, and it is not sufficient to show that it probably exists, but that it does, in fact, exist.

Following the adoption of this statute this Court in *McNeeley v. Asbestos Co.,* 206 N. C., 568, based its conclusion upon the negligence of the employer which, as to the employee, constituted an accident. In *Swink v. Asbestos Co.,* 210 N. C., 304, the injury not being the result of negligence, compensation was denied.

Then the Legislature, probably for the purpose of clarifying the law, and its intent, following the decisions in the *McNeeley* and *Swink cases, supra,* by ch. 123, sec. 1, Public Laws 1935, materially amended ch. 120, sec. 2 (f), 1929. It is there provided that "the word 'accident,' as used in the Workmen's Compensation Act, shall not be construed to mean a series of events in employment, of a similar or like nature, occurring regularly, continuously or at frequent intervals in the course of such employment, over extended periods of time, whether such events may or may not be attributable to fault of the employer, and disease attributable to such causes shall be compensable only if culminating in an occupational disease mentioned in and compensable under this article."

By this act the Legislature included within the provisions of the Workmen's Compensation Law all occupational diseases which are ex-

pressly mentioned and designated and specifically excluded all other diseases *"even though such disease is attributable to the negligence of the employer"* unless such disease naturally and proximately results from an injury by accident.

The act of 1929 as thus supplemented and amended by the 1935 act now leaves the law in this state: if the disease is occupational then compensation is allowed although the disease develops from a series of events of similar or like nature, whether such series of events is attributable to negligence of the employer or not. If. the disease is not occupational compensation is denied even though caused by the negligence of the employer, unless it results naturally and unavoidably from an injury by accident.

Thus, in deciding whether a non-occupational disease is compensable, we must bear in mind that: (1) The express mention of a disease which is the consequence of the injury excludes all diseases which are not; (2) the disease must be preceded by the injury; (3) the disease cannot constitute the injury itself; (4) in the statute "disease" and "injury by accident" are placed in contrast to each other; (5) disease is never comprehended in the term "injury by accident"; and (6) the accident and the disease cannot be the same transaction, event or series of events.

Pulmonary tuberculosis with which the plaintiff is suffering is not an occupational disease mentioned in the statute.

But the majority opinion proceeds upon the theory that the pulmonary tuberculosis from which the claimant is suffering is not the result of "a series of events in employment, of a similar or like nature, occurring regularly, continuously or at frequent intervals in the course of such employment, over extended periods of time." It takes the position that there was one occurrence only, to wit, the accidental coughing of claimant's fellow employee directly into claimant's mouth as a result of which "I could feel something wet come all over my face and go into my mouth" and that this produced the tuberculosis. This position is not sustained either by the evidence or by the findings of fact of the hearing Commissioner and the Full Commission.

The evidence discloses that claimant was closely associated in his employment with a fellow employee who was suffering from active tuberculosis and that during working hours he was compelled to undergo continuous exposure and that at frequent intervals, in the course of such employment over an extended period of time, his fellow employee coughed and in so doing emitted spray. Claimant testified: "I was with Tyson (the infected fellow employee) from September, 1938, to February, 1939, during the course of my work with the Employment Compensation Commission with the exception of short periods while I was transferred to some other department in the building. During February,

1939, in the course of my work at the Commission I worked with Tyson at the west end of the addressograph bank of files, pulling plates from frames, with the exception of a few days which I worked in another department, that is, with these few days in the first part of February—associated with him constantly during the month of February, 1939, with the exception of the first few days of the month.

"During January and February, 1939, I noticed that Tyson coughed oftener than he had been before. . . . During February, 1939, he had fits of coughing and he coughed very often, I'd say he coughed incessantly throughout the day. I was in very close contact with him during that month. We were working on a very small improvised stand which was about 3 feet square, and our work necessitated us sitting across from each other or side by side and I remember him coughing right in my face, of course accidentally, but several times."

Then the claimant described a particular occurrence some time in February as follows: "I remember on that particular day we were working down at the west bank of files pulling plates he accidentally coughed directly into my mouth which happened to be open at that time. . . . We were working side by side, and it just happened my head was turned toward him when he coughed . . . we were sitting side by side and engaged in conversation and I turned to ask him a question and at the moment I turned to him he coughed in my face, and his hands, he was using his hands to pick up a drawer at that time. That is the reason I remember he didn't have his hands over his mouth. I remember that I could feel something wet come all over my face and go into my mouth." He then testified: "I remember other particular occasions in which he coughed and I was in the area of the spray from the mouth, any number of times; I don't remember any particular occasions, no particular dates, but I was in his spray any number of days. I mean that I felt his breath and his spray go into my face."

This testimony clearly indicates a series of events occurring over a period of time within the meaning of sec. 1, ch. 123, Public Laws 1935.

The claimant does not undertake to say, and we may as well concede that he could not truthfully say, that he was inoculated at any particular time or as the result of any particular coughing.

The physicians who testified in behalf of claimant did not undertake to say that claimant became infected at any particular time or as a result of any particular occurrence.

The majority opinion, in its statement of facts, quotes in full the hypothetical question asked one of the expert witnesses, and apparently relies upon the answer thereto as evidence of inoculation as the result of a particular incident. An analysis of this question and the answer does not justify this conclusion. The question was not confined to one

incident. It included the suppositious finding that claimant worked during part of the time or upon various occasions with Frank Tyson who developed symptoms of tuberculosis in the form of coughing and other symptoms during February, 1939, and that about the middle of February, 1939, Tyson unexpectedly and involuntarily coughed directly into the face of Neill MacRae, expectorating sputum or spray into his mouth. The doctor answered: "My opinion is that MacRae contracted his tuberculosis from Frank Tyson as a result of his working in close proximity with Tyson. . . . I think that MacRae's working in close proximity to Tyson undoubtedly caused his tuberculosis." He was then asked: "Do you think the sputum that went into his mouth and the sprays that went into his face caused it?" (NOTE. The sprays went into his face on numerous occasions.)

"A. You are trying to make the point that this one particular cough produced the disease in MacRae?"

"Q. Based upon those findings and remembering the facts, I am trying to clarify it.

"A. Yes, sir, I think he got his tuberculosis as a result of Tyson's coughing into his face or near enough for him to inhale the organisms. . . . I cannot answer as to which is the most likely to produce it, the large dosage or the numerous small doses. . . . We do not have a record of human tuberculosis authentic to draw a conclusion of that, as to whether we can attribute the development of the disease to small dosages over a period of time or the reception of a large dose at a single instance wherein sufficient time the disease developed."

If the hypothetical question is to be construed as relating to the one incident only, then it was prejudicial in that it ignores other evidence of causation offered by plaintiff. Even so, the witness declined to confine the cause to this one incident. He said: "I think he got his tuberculosis as a result of Tyson's coughing into his face or near enough for him to inhale the organisms." And the plaintiff testified that Tyson coughed "right in my face . . . several times . . . he coughed incessantly throughout the day during February. . . . I was in very close contact with him during that month working on a stand 3 feet square."

If the question is to be so considered the defendant, as it had a right to do, examined him as to the other evidence of causation. *Va. Beach Bus Line v. Campbell,* 73 F. (2d.), 97; *S. v. Stewart,* 156 N. C., 636, 72 S. E., 193; *S. v. Holly,* 155 N. C., 485, 71 S. E., 450; *Godfrey v. Power Co.,* 190 N. C., 24, 128 S. E., 485. In his answers to the additional questions propounded by counsel for the claimant and by counsel for the defendant the witness made it very clear that he was not confining the cause of infection to any one incident.

I may here note that it is a matter of common knowledge that what goes into the mouth usually reaches the alimentary, and not the respiratory, tract. In this connection this witness testified: "It is the presence of fine droplets of moisture coming out of the lung of the coughing patient and going into the respiratory tract of the recipient and inhaled in the lung" that causes the tuberculosis. And again: "I don't have positive proof he was infected at that time, no. I will testify that it is possible he did and in my opinion, likely he did."

Dr. Combs, witness for the employer, being tendered to and examined by claimant, testified: "My opinion is that Mr. MacRae's condition, chronic pulmonary tuberculosis, is attributable to his exposure to Mr. Frank Tyson while at work in view of the fact that there is no other history of contact." This answer was given in response to a hypothetical question similar to the one propounded to Dr. Brian. This witness testified further: "I couldn't attribute to that one case or one exposure when he had been exposed over a period of time; that may be a factor. . . . I'd say that would be an important factor but I couldn't say that would be the proximating factor because he could have developed the tuberculosis from the other exposure he had."

Thus it appears that each expert witness examined declined to give as an opinion that the one occurrence when Tyson coughed into the face of the claimant causing sputum to go into his mouth caused the tuberculosis. There is no evidence that such sputum as entered the mouth of the claimant was charged with tubercular germs or that he became inoculated at that time, and there is no sufficient evidence from which the existence of these facts may be assumed.

The individual Commissioner did not so find. After finding the facts in relation to the plaintiff's exposure to Tyson and that Tyson was during the month of February suffering from an active case of pulmonary tuberculosis, he further found, "that they had to work in such close proximity to each other that when the said Frank Tyson coughed— which he did frequently, the vapor and spray from his mouth would fly into the face of the plaintiff Neill MacRae; and that on one occasion, on or about the 15th of February, 1939, that the said Frank Tyson coughed while suffering with active pulmonary tuberculosis and that some of the sputum from his cough flew into the mouth of the plaintiff Neill MacRae." He further found "the Commissioner finds as a fact from the evidence and the greater weight of the evidence that the reception of the sputum sprays and the sputum itself from the mouth of Tyson into the face and mouth of the plaintiff was the cause of the development of the tuberculosis in the plaintiff; and, the Commissioner further finds as a fact that the reception of said spray and sputum flying through the air under the circumstances as described in the evi-

dence in this case, amounted to an injury by accident." This finding must be related to the evidence which discloses that the sprays were constantly flying through the air and into claimant's face over a considerable period of time.

The findings and conclusion of the hearing Commissioner were approved by the Full Commission. In addition the Commission made the following finding: "In the instant case, the Commission is of the opinion that the coughing and the sputum accidently hitting the plaintiff and entering his mouth constituted an injury by accident."

This finding is somewhat ambiguous. If related to the evidence it refers necessarily to the coughing over a period of time. If we arbitrarily confine it to one incident, the one incident intended is not made very clear. And if we assume that it refers to the one incident now relied on by plaintiff there is no finding that the claimant's infection resulted. No doubt the coughing into the face of the plaintiff under the circumstances outlined in the evidence was repulsive and offensive and could be classified as an injury. Even so, it does not follow, and it is not found, that the inoculation then occurred. To so find would require a degree of omniscience not possessed by man for, as testified to by the expert witness, in substance, we are constantly exposed to disease-producing germs and the medical science has not yet pointed the way to determine the exact moment or occasion of infection.

Apparently the majority recognize the defect in the findings of fact and the absence of that finding which, if supported by evidence, is essential to the plaintiff's claim. The majority opinion seeks to supply the missing link. It is there stated: "Plaintiff's tubercular disability is directly attributable to his infection when Tyson involuntarily and unexpectedly coughed spray and sputum into plaintiff's face and mouth." This finding of fact is not incorporated in either the opinion of the individual Commissioner or in the opinion of the Full Commission and it is not supported by evidence. Nor are we, if I understand the rules clearly, permitted to make such a finding of fact.

It is again later stated in the opinion: "We think that plaintiff's disease was proximately produced by infection from germs transmitted to him in droplets of spray and sputum coughed up and expectorated into his face and mouth by a negligent employee in the course of his employment by defendant; that the unusual circumstances and conditions under which said injury was produced constituted an accident arising out of his employment." Neither this finding of fact nor this conclusion is to be found either in the opinion of the hearing Commissioner or in the opinion of the Full Commission. Nor is there any evidence sufficient to support the finding by this Court, even if we had the power to so supplement the record.

We may concede that claimant probably contracted tuberculosis in the course of his employment. This is not sufficient. It must be shown that he did in fact become inoculated in the course of his employment and *by accident*.

How can it be said that the transmission of bacilli from one person to another, the whole operation being invisible, intangible and without any *situs* of inception, and which takes place without the knowledge of the employee receiving the bacilli and unknown to the employee from whom the bacilli are contracted, assumes the proportion and classification of an accident? The whole transaction from the inception to the time the disease becomes clinically recognizable is one indivisible and connected operation. The whole transaction is progressive. The disease may be received in the system and never become active; it may progress to the point that lesions are formed, and it is impossible to say at what point the accident occurred.

Bacteria are daily received into the body, by contact or inhalation, without resultant disease. The fact of their presence is not the fact of disease. Is it possible to say that there is a blow, a traumatism, or a violent act when microscopic organisms whose bodies are not visible, whose touch cannot be felt and whose presence cannot be known passes into the lungs with the air by which they are carried?

Granted that there is an impact of bacteria whenever they enter the body so that accidental injury occurs, then every day of our lives we receive accidental injuries; and on the testimony in this case the claimant received such injuries practically every hour during which he was on duty throughout the full month of February. *Richardson v. Greenburg, supra.* To attempt to so classify such an occurrence is comparable to undertaking to put big threads through the eyes of little needles.

Further, it must appear that the injuries (and disease, under the act is not treated as an injury but as the result of the injury) arose out of the employment. The term "arising out of" excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. The event must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence. *Harden v. Furniture Co.,* 199 N. C., 733; *Plemmons v. White's Service, Inc.,* 213 N. C., 148; *Walker v. Wilkins,* 212 N. C., 627.

The "storm" of bacilli, *Walker v. Wilkins, supra;* the "bite" of the tubercular germ, *Plemmons v. White's Service, Inc., supra;* the "assault" by a fellow employee, *Harden v. Furniture Co., supra,* were not incident to the employment. The hazard was common to life. In no sense did the causative danger arise out of the employment.

To hold that plaintiff's disease is compensable will convert the Workmen's Compensation Act into a species of compulsory medical insurance as against the infectious and contagious diseases. If the employer is responsible for pulmonary tuberculosis then he would also be responsible for a case of influenza, common colds or poliomyelitis whenever the evidence tends to show there was an exposure to an infected fellow employee during working hours. These are risks not connected with any business and against which no employer can guard.

The employer assumes only the risks incident to the business or employment. *Chambers v. Oil Co.,* 199 N. C., 28; *Beavers v. Power Co.,* 205 N. C., 34; *Goodwin v. Bright,* 202 N. C., 481.

It may be well to note further that if we consider the additional findings by the Full Commission to be supplemental of and in addition to the findings of the hearing Commissioner so as to confine "the injury by accident" to the one incident then there is a conflict of findings by the Full Commission. It adopted the findings and conclusions of the individual Commissioner and then, on this theory, made a contrary finding.

The language in the opinion of the hearing Commissioner, approved by the Full Commission, clearly indicates that the Commission realized that in allowing compensation it was skating on thin ice. Notice is served therein that the decision in this cause is not to be considered a precedent. I agree that the condition of claimant is unfortunate and the circumstances under which he apparently contracted his disease are regrettable. However, the law that applies to one must apply to all. The Legislature has excluded the disease with which the claimant is suffering from the list of diseases compensable under the act. In my opinion the judgment below should be reversed.

Stacy, C. J., and Winborne, J., concur in dissent.