***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Homick and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. On September 4, 2008, the employee's average weekly was $488.40, resulting in a weekly compensation rate of $325.62.
5. The parties stipulated to the admissibility of the following documents, which were received into evidence by Deputy Commissioner Homick:
 a. Exhibit 1: Pre-Trial Agreement;
 b. Exhibit 2: Plaintiff's Medical Records; and
 c. Exhibit 3: Industrial Commission Forms, Discovery Responses and Receipts for Payment of Medical Bills Incurred in Ghana, West Africa, (pages 1-115).
6. In addition, Plaintiff introduced the following exhibit, which was received into evidence by Deputy Commissioner Homick:
 a. Plaintiff's Exhibit 1: Plaintiff's Medical Records from Ghana, West Africa
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Homick's October 27, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Was Plaintiff injured by accident while in the scope of his employment on or about September 4, 2008, as defined by N.C. Gen. Stat. § 97-2(6)?
2. If so, to what, if any, benefits is Plaintiff entitled?
 *********** *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was twenty-six (26) years old and resided in Accra, Ghana. Plaintiff graduated from high school and was enrolled in a university in Ghana, where he studied political science. Plaintiff anticipated that he would receive his degree in May 2011.
2. In the summer of 2008, Plaintiff came to the United States through American Work Adventure, an internship program. Through this program, Plaintiff was assigned to work at Defendant-Employer.
3. During the year prior to coming to the United States, Plaintiff was a full-time student and also worked approximately five hours per week as a graphic designer. Plaintiff earned approximately $102.00 per month at that time. Plaintiff also taught Basic English and Mathematics to students in the first through fifth grades and was paid for this work.
4. On July 8, 2008, Plaintiff commenced work for Defendant-Employer in Kitty Hawk, North Carolina, where he was employed as an overnight stocker. This was a temporary work assignment. Plaintiff's job duties required him to stock merchandise by placing it on racks and shelves and deposit trash into the recycling bin in the back room of the store. Plaintiff worked the night shift from 10:00 p.m. to 7:00 a.m.
5. Plaintiff testified that during his shift, at approximately 5:00 a.m. on September 4, 2008, he was assigned to collect trash and place it in the recycling bin in the back room of the store. Plaintiff stated that while in the back room, his co-worker, "Norman," was gathering shopping carts. Plaintiff claims Norman was pushing four shopping carts that were stacked *Page 4 
together. Plaintiff testified he was throwing trash into the recycling bin in the back room when Norman pushed the four shopping carts towards him. Plaintiff stated one of the shopping carts flipped and struck him on the outside of his left knee while he was throwing the trash into the recycling bin.
6. Plaintiff testified that he fell down after the shopping cart struck him on the left knee. That same day, Plaintiff informed his supervisor that a shopping cart had struck him and he was given ice and a bandage to place on his knee. Following this incident, Plaintiff went to the lunchroom and remained there until 7:00 a.m., when he was taken home. Plaintiff testified that following the September 4, 2008 accident, he did not experience any bleeding or bruising, but that he later experienced slight swelling in his left knee.
7. Kenneth Johnson, who was also a night stocker with Defendant-Employer, was working with Plaintiff on September 4, 2008. Mr. Johnson testified that he was in the back room of the store stacking pallets when Norman and Plaintiff shouted to get his attention. Plaintiff pretended he was dribbling a bag of plastic as if it were a ball. Plaintiff then ran and jumped as if he were shooting a basket and threw the plastic into the recycling bin. According to Mr. Johnson, while Plaintiff was in the air, Norman pushed a shopping cart in front of Plaintiff, which struck his left leg. Mr. Johnson testified that the shopping cart was moving at a gentle roll when Plaintiff struck his left knee against the cart.
8. According to Mr. Johnson, when Plaintiff struck his leg against the shopping cart, there was no loud noise and he did not recall Plaintiff falling down. Mr. Johnson did not learn that Plaintiff was claiming that he was injured until several days later when Plaintiff told him that he was not going to work because his leg was hurting. *Page 5 
9. On September 10, 2008, Plaintiff presented to Dr. James Owens, a family physician. Dr. Owens' examination of Plaintiff's left knee revealed pain with flexion and slight tenderness to palpation of his left kneecap. Plaintiff did not have any bruising or swelling at this visit. Dr. Owens testified there was no evidence of any kind of internal derangement in Plaintiff's left knee. Dr. Owens diagnosed Plaintiff with non-specific knee pain, referred Plaintiff for an x-ray of his left knee and prescribed anti-inflammatory medication. Dr. Owens released Plaintiff from work for three days. The x-ray of Plaintiff's left knee was negative.
10. Plaintiff returned to Dr. Owens on September 12, 2008. There were no significant changes in Dr. Owens' examination of Plaintiff and he continued to diagnose Plaintiff with non-specific left knee pain. Dr. Owens prescribed a different anti-inflammatory and muscle relaxant and released Plaintiff from work through September 21, 2008.
11. On September 16, 2008, Plaintiff presented to Dr. Brian Baxter at the emergency department of The Outer Banks Hospital. Plaintiff reported that while working for Defendant-Employer, he jumped up in the air to throw things into a bin and when he came down, he struck a shopping cart with his left knee. Dr. Baxter's examination of Plaintiff's left knee revealed that Plaintiff had decreased range of motion of the left knee, but no swelling, no effusion (fluid), no ecchymosis (bruising), no deformity, no laceration, no erythema (redness), no lateral collateral ligament laxity, no bony tenderness, no medial collateral laxity and normal alignment. Dr. Baxter's examination did reveal some medial joint line, lateral joint line, medial collateral and lateral collateral ligament tenderness in Plaintiff's left knee. Dr. Baxter diagnosed Plaintiff with a sprain and strain of the left knee and leg as well as joint effusion and provided Plaintiff with crutches and a knee immobilizer. Dr. Baxter testified that if Plaintiff had a sprain, as he thought, he would have expected Plaintiff to be out of work for a week or less. *Page 6 
12. On September 18, 2008, Plaintiff's last visit to Dr. Owens' office, Plaintiff was seen by Dr. Owens' nurse practitioner, who did not provide Plaintiff with an out-of-work note.
13. Dr. Owens opined that Plaintiff suffered from a soft tissue injury that should have healed within a week to two weeks following the alleged injury. Dr. Owens based his opinion upon Plaintiff's presentation at his last appointment on September 18, 2008, the fact that Plaintiff did not have any effusion, and the fact that Plaintiff's left knee x-ray was normal.
14. Plaintiff never returned to work for Defendant-Employer after September 5, 2008, and on September 22, 2008, Plaintiff returned to his home in Accra, Ghana, as previously scheduled.
15. After returning to Ghana, Plaintiff received treatment from Korle Bu Teaching Hospital on December 31, 2008, where he complained of a painful left knee. Examination of Plaintiff's left knee revealed tenderness at the superior part of the left patella, lateral and posterior aspect of the left knee. All ligaments appeared intact and there was no swelling in the left knee. It was recommended that Plaintiff undergo an examination of his left knee under anesthesia and an MRI scan of his left knee.
16. In August 2009, Plaintiff returned to the university in Ghana as a full-time student. Plaintiff has not returned to work or earned any wages since he returned to Ghana on September 22, 2008.
17. On January 6, 2009, Plaintiff underwent examination of his left knee under anesthesia. The only abnormality this examination revealed was mild left quadriceps wasting. The examination did reveal full range of movement of the left knee and left hip, no medial shift, no laxity of the medial collateral ligaments, and no effusion. Plaintiff testified that his left knee worsened after this procedure. *Page 7 
18. On April 16, 2009, Dr. Frederick Kwarteng, an orthopedic surgeon with Korle Bu Teaching Hospital in Ghana, drafted a letter discussing the treatment Plaintiff had received in Ghana. Dr. Kwarteng noted that Plaintiff had left knee pain, difficulty in the left straight leg raising and mild quadriceps wasting. Dr. Kwarteng assessed Plaintiff's incapacitation at 54%. There was no evidence that this rating was assessed in accordance with North Carolina Industrial Commission rating guidelines or that any disability was related to Plaintiff's September 4, 2008 work injury. Accordingly, the Full Commission gives this rating no weight.
19. Plaintiff does not take any oral medication, but periodically applies herbs and ointment to his knee. Plaintiff testified that he currently cannot walk normally or run due to his left knee condition and is unable to lift much weight. Plaintiff also testified that he walks on the university's campus to his classes and is able to walk continuously for an hour without experiencing pain in his knee.
20. Based upon the greater weight of the evidence, the Full Commission finds that on September 4, 2008, while he was throwing trash into the recycling bin, Plaintiff suffered an injury by accident to his left knee and that such injury arose in the course of and arising out of his employment with Defendant-Employer.
21. As a result of his injury on September 4, 2008, Plaintiff was unable to earn the same or greater wages as he was earning in the same or any other employment from September 5, 2008, through September 21, 2008, based on Dr. Owens medical opinion and the testimony at hearing.
22. There is insufficient medical evidence of record to find that Plaintiff was unable to work after September 21, 2008, as a result of his work injury on September 4, 2008. *Page 8 
23. The Full Commission finds that the treatment Plaintiff received for his September 4, 2008 injury from Dr. Owens and Dr. Baxter was reasonably required to effect a cure, provide relief or lessen the period of Plaintiff's disability for Plaintiff's left knee injury. The Full Commission further finds that Plaintiff failed to prove that any further medical treatment he received in Ghana, West Africa for his left knee was reasonably required or related to the September 4, 2008 work injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Workers' Compensation Act contemplates the gathering together of workers of varying characteristics and the risks and hazards of such close contact, including joking and pranks by the workers, are incidents to the business and grow out of it and are ordinary risks assumed by the employer under the Act.Chambers v. Union Oil Co., 199 N.C. 28, 153 S.E. 594 (1930).
2. On September 4, 2008, Plaintiff sustained an admittedly compensable injury by accident to his left knee, arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
3. As a direct and proximate result of Plaintiff's compensable injury by accident on September 4, 2008, Plaintiff was unable to earn the same or greater wages as he was earning in the same or any other employment from September 5, 2008, through September 21, 2008. As a result, Plaintiff is entitled to receive temporary total disability compensation at the rate of $325.62 per week for this period. N.C. Gen. Stat. § 97-29. *Page 9 
4. As a direct and proximate result of Plaintiff's compensable injury by accident on September 4, 2008, Plaintiff is entitled to all medical expenses incurred for his left knee injury for services by Dr. Owens and Dr. Baxter as such examinations, evaluations and treatments were reasonably required to effect a cure, give relief or tended to lessen Plaintiff's period of disability. Based on the greater weight of the medical evidence, Plaintiff is not entitled to ongoing medical treatment for his left knee condition, including the treatment he received in West Africa. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $325.62 per week from September 5, 2008, through September 21, 2008.
2. Defendants shall pay all medical expenses incurred as a result of Plaintiff's compensable injury by accident to his left knee for services rendered by Dr. Owens and Dr. Baxter, as such examinations, evaluations and treatments were reasonably required to effect a cure, give relief or tend to lessen Plaintiff's period of disability. Plaintiff is not entitled to ongoing medical treatment for his left knee, including the treatment he received in West Africa.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due Plaintiff under Paragraph One of this Award is approved for Plaintiff's counsel and shall be paid directly to Plaintiff's counsel.
4. Defendants shall pay the costs. *Page 10 
This the 13th day of July, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1