No. 15,508.

GATES RUBBER COMPANY *v.* INDUSTRIAL
COMMISSION ET AL.
(150 P. [2d] 301)

Decided June 26, 1944.

Mr. WILBUR F. DENIOUS, Mr. HUDSON MOORE, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-

RENCE HINKLEY, Deputy, Miss BARBARA LEE, Assistant, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

CLAIMANT, John P. Mambourg, filed with the Industrial Commission a claim for compensation against the Gates Rubber Company, his employer, for injuries allegedly sustained in an accident arising out of and in the course of his employment. A referee of the commission found for claimant. The finding was approved by the commission and compensation awarded. The employer, self-insured, in regular course, instituted an action in the district court where judgment was entered sustaining the award of the commission. To reverse that judgment, employer prosecutes a writ of error.

Only one issue is raised by the specification of points, namely, whether the accident arose out of the employment. There is no conflict in the evidence. Claimant, with a fellow employee, was rolling fabric, or cords, between two sheets of rubber. The rubber is described as synthetic and the sheets of rubber were lumpy so that the finished product was not of the character desired. The two employees stopped the machine and sent to the laboratory for a technician to determine the trouble. Claimant sat down on an eighteen-inch roller, or spool, known as a liner, and was talking with his fellow employee about the difficulty. Another employee came along, and seeing him there, in a spirit of play gave the roller a spin and threw claimant backwards. His back struck an iron bar injuring three of his vertebra, for which injury and the ensuing disability he claimed compensation.

There appear to be two divergent lines of authority, under one of them such accidents are held to arise out

of the employment, and under the other they are held not to arise out of the employment. The commission and the district court adopted the former. The employer contends that the latter line of authorities announce the correct rule and that Colorado is committed to this rule.

The referee made very complete findings and therein set forth the law which he deemed properly applicable to the case. The findings contain what is in effect a brief in support of the rule followed. The basis of the rule allowing compensation in such cases is well stated in *Chambers v. Union Oil Co.*, 199 N. C. 28, 153 S.E. 594, as follows: "The bulk of normal American workmen possess a stratum of residuum of vivacity and good nature which frequently manifests itself in joking and harmless pranks. These things are not unnatural, but natural, and the ordinary outcropping of industrial contact between men of all classes and types. Such risks, therefore, are incident to the business and grow out of it."

In *Cassell v. United States F. & G. Co.*, 115 Tex. 371, 283 S.W. 127, the court used these words: "Considering every employee particularly exposed to such pranks from his coemployees as are inspired by nothing more than a well-nigh universal human craving for fun, and recognizing that such pranks, when careless though innocent, not infrequently occasion bodily harm, we are forced to consider these pranks as a hazard which the employee required to work with others must encounter in the performance of his duties, and hence such pranks constitute a risk reasonably inherent in or incident to the conduct of the employer's business."

In each of the foregoing cases claimant, as is true also in the instant case, was not engaging in the pranks that caused the injury.

In *Leonbruno v. Champlain Silk Mills*, 229 N. Y. 470, 128 N.E. 711, claimant lost the sight of his eye occasioned by being struck by an apple thrown about in

sport by two fellow employees. "He did not participate in the horseplay and had no knowledge of it till injured." The court approved an award of compensation and as reason therefor said: "The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment. * * * The risks of injury incurred in the crowded contacts of the factory though the acts of fellow-workmen, are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk." To a similar effect are: *Borden Mills v. McGaha,* 161 Tenn. 376, 32 S.W. (2d) 1039; *Badger Furniture Co. v. Industrial Com.,* 195 Wis. 134, 217 N.W. 734; *Socha v. Cudahy Packing Co.,* 105 Nebr. 691, 181 N.W. 706; *May Chevrolet Co. v. Armstrong,* 82 Ind. App. 547, 146 N.E. 847; *International Harvester Co. v. Industrial Com.,* 354 Ill. 151, 187 N.E. 916.

On the other hand, the employer cites a number of cases which support a contrary view. In *Hulley v. Moosbrugger,* 88 N.J.L. 161, 95 Atl. 1007, a fellow employee, in a spirit of fun, swung his arm to knock off decedent's hat, or to strike him; decedent dodged, slipped on an inclined concrete floor and fell, receiving injuries resulting in death. The claim for compensation was upheld below. The Court of Appeals in reversing the judgment said: "We are of the opinion that the employer is not liable, under the Workmen's Compensation Act (Pamph. L. 1911, p. 134), to make compensation for injury to an employe, which was the result of horseplay or skylarking, so called, whether the injured or de-

ceased party *instigated the occurrence* or *took no part in it,* for, while an accident, happening in such circumstances, may arise in the course of, it cannot be said to arise out of, the employment."

In *Lee's Case,* 240 Mass. 473, 134 N.E. 268, an employee, not participating in the horseplay of fellow employees, was injured and denied compensation on the ground that the accident did not arise out of the employment. Claimant was knocked down while in the course of his employment as a result of fooling, or horseplay, of fellow employees, in which one of the other employees was pushed out of a doorway and against compensation claimant. The court said: "Such acts, *whether done in a spirit of play or from a malicious motive,* have no relation whatever to the employment; and they are wholly outside the scope of the employment of those who caused the injury."

To similar effect are: *Pacific Employers' Ins. Co. v. Division of Indus. Acc. & Safety,* 209 Cal. 656, 289 Pac. 619; *Payne v. Industrial Com.,* 295 Ill. 388, 129 N.E. 122; *Washburn's Case,* 123 Me. 402, 123 Atl. 180; *Steffes v. Ford Motor Co.,* 239 Mich. 501, 214 N.W. 953; *Tarpper v. Weston-Mott Co.,* 200 Mich. 275, 166 N.W. 857; *Moore's Case,* 225 Mass. 258, 114 N.E. 204; *Coronado Beach Co. v. Pillsbury,* 172 Cal. 682, 158 Pac. 212; *DeFilippis v. Falkenberg,* 170 App. Div. 153, 155 N.Y.S. 761, 114 N.E. 1064; *Feda v. Cudahy Packing Co.,* 102 Neb. 110, 166 N.W. 190; *Wittmer v. Dexter Mfg. Co.,* 204 Iowa 180, 214 N.W. 700; *Georgia Casualty Co. v. Martin,* 157 Ga. 909, 122 S.E. 881.

The employer calls attenion to our decision in *Olson-Hall v. Industrial Com.,* 71 Colo. 228, 205 Pac. 527, wherein we held, as stated in the syllabus, "that the burden of proof is upon the party asserting the claim, and he must show that the injury or death was the proximate result of an accident arising out of and in the course of employment."

Our attention further is called to the recent case of

*Industrial Commission v. Betz,* 111 Colo. 401, 142 P. (2d) 389, wherein we said: "In workmen's compensation cases where the evidence, as disclosed by the record, is without substantial conflict as to the controlling issues involved, courts may properly draw their own conclusions therefrom [here as to whether deceased was injured in an accident arising out of and in the course of his employment] and enter judgment accordingly, notwithstanding the determination may be contrary to the findings and award of the Industrial Commission."

Counsel for the employer then say that our decision in *McKnight v. Houck,* 87 Colo. 234, 286 Pac. 279, necessitates a reversal of the judgment in the instant case and, the evidence not being conflicting, an entry of judgment denying compensation. In that case we reiterated our former pronouncements, "that an accident arises out of an employment when there is 'a casual connection between the conditions under which the work is required to be performed and the resulting injury.' " *Industrial Commission v. Enyeart,* 81 Colo. 521, 524, 256 Pac. 314; *Industrial Commission v. Anderson,* 69 Colo. 147, 169 Pac. 135, L.R.A. 1918F, 885.

In the McKnight case two employees were sent to count cattle and directed to go prepared to shoot any dogs or coyotes found running the stock. Upon their return they stabled their horses and started for the bunkhouse. On the way they "each drew their guns to see which one could draw it the quicker and some way the gun went off and shot the boy." The commission denied compensation, the district court upheld the commission, and we affirmed its judgment. It should be noted that both were participating in the action. That it was not intended to determine a case where the injury occurs to a nonparticipant is clear from the language of our opinion: "This gun play was no part of the duties of the boys and there is no evidence that their employer had knowledge of such previous practice. The two had stepped aside from their employment and were amus-

ing themselves in a manner utterly foreign to it. This was no industrial accident. It is entirely unrelated to those cases in which an employee, attending to his duties, is murdered by a third person. Neither is there here any question of non-participation of deceased in the play, nor of the acquiescence of the employer."

It is contended that our opinion in *Rocky Mountain Co. v. Kruzic,* 94 Colo. 398, 30 P. (2d) 868, is authority under which the judgment in the instant case should be reversed. There claimant, a Slav, was shot by another Slav formerly in the employ of the employer company, "but had been without a job for fifteen days." The record is silent as to any motive or reason for the murderous assault, or as to anything connecting it in any way with the employment. Compensation was awarded by the commission; the action of the commission was sustained by the district court but we reversed the judgment saying: "To 'arise out of' the employment, unmistakably means that the cause of the accident was at all times 'in' the employment. It could not come out of it, unless it was first in it. Does the fact, that for no reason assigned in, or explained by, the evidence, an assailant shot the claimant while at work, make the accident one reasonably incident to his employment? This could have happened to him at any other time or place. It is not shown that the employment in any way brought on the attack. It was a wilful assault, unexplained by a single word of the evidence; and any reason therefor unknown to the claimant, according to his testimony. Unless the reason for the attack is shown by the evidence to be in some way peculiar to the employment, then it must be assumed to have been foreign thereto. Before claimant can secure the benefits of the Workmen's Compensation Act, he must trace the injury to a connection with the employment as a contributing proximate cause."

We think our ruling in that case is not determinative of the case before us; nor is our holding in

*Industrial Commission v. Strome,* 107 Colo. 54, 108 P. (2d) 865, wherein the facts differed from that of the case last mentioned only in that the assailant was an employee, and the instrument of assault was a shovel instead of a gun. Even murderous assaults conceivably might arise under circumstances which, if shown by the evidence, would authorize a holding that the victim was thereby injured as the result of an accident arising out of the employment. Each case must be determined on its own facts; all that the two last mentioned cases hold is, that under the factual situations there existing no recovery could be had. In the instant case no criminal intent or act is suggested by the facts; they show merely a thoughtless, careless, unconsidered act by the fellow employee that undesignedly and unfortunately resulted in claimant's injury. From claimant's standpoint the injury occurred not only while he was employed, but because he was employed and engaged in the work he had been directed to do. He was where he had a right to be; he was discussing the work with his fellow employee at the machine and waiting for expert help to clear up their difficulties; he was doing the natural thing for a workman during the temporary intermission—sitting on an available object near the machine. He had no authority, so far as the record discloses, to hire or control other employees in the plant. He was merely one workman among many, doing the work he was directed to perform. An accident resulting proximately from the conditions under which the business is carried on and under which the employee necessarily does his work, is one "arising out of * * * his employment" within the intent and meaning of those words as used in the Compensation Act defining a compensable injury. '35 C.S.A., c. 97, §294.

Judgment affirmed.