No. 18,372.

CURTIS H. MILLER, A MINOR, BY HIS MOTHER AND NEXT FRIEND, ETC. *v.* THE DENVER POST, INC., ET. AL.

(322 P. [2d] 661)

Decided February 3, 1958.   Rehearing denied March 24, 1958.

62

Mr. L. F. BUTLER, Mr. GEORGE HINSHAW, for plaintiffs in error.

Messrs. AKOLT, TURNQUIST, SHEPHERD & DICK, Mr. LAURENCE W. DEMUTH, JR., for defendant in error The Denver Post, Inc.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKETT, Mr. FRED B. DUDLEY, for defendant in error State Compensation Insurance Fund.

Messrs. Van Cise & Van Cise, amici curiae.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

This is a claim before the Industrial Commission under the Workmen's Compensation Act. Plaintiff in error, a minor, was the claimant before the Commission and will be so designated. The district court affirmed the findings and award of the Commission denying claimant compensation. Claimant is here by writ of error seeking reversal.

Claimant was a newspaper carrier boy for The Denver Post. At the time of his injury he had folded his papers preparatory to departing to deliver the afternoon edition to his customers. By his claim before the Commission he sought: 1. To have the Commission ascertain that he was an employee of The Denver Post as defined by the Workmen's Compensation Act, C.R.S. '53, 81-2-7; and 2. That his injuries arose out of and in the course of his employment.

The Industrial Commission made no findings on point 1, and on point 2 it found that assuming, without deciding, that there was a relationship of employer and employee between claimant and The Denver Post, the injuries sustained by the claimant did not arise out of or in the course of any alleged employment.

The facts were that at the time the claimant was injured he was pursuing, down an alley and through vacant lots, other boys who had taken a radio aerial from his bicycle. The last boy in possession of the aerial ran across the alley from one vacant lot to another, and the claimant was in pursuit. In order to prevent the claimant from repossessing the aerial, the boy who had it was swinging it in an arc over his head, the swinging motion caused an end of the metal aerial to come loose and fly through the air striking the claimant, causing the

injuries. From the above facts the Commission found, in a more detailed statement than is necessary to repeat here, that the claimant "stepped outside the scope of his employment and that the accident did not arise out of and in the course of his employment." The Commission further found that the claimant failed to meet the burden of proof imposed upon the party asserting the claim to show that the injury was the proximate result of an accident arising out of and in the course of employment. *Olson-Hall v. Industrial Commission,* 71 Colo. 228, 205 Pac. 527. There were other findings that there was "no causal connection between the work performed by the claimant and the incident responsible for the injury." And "that the radio aerial played no part in plaintiff's delivery of the paper or of the service to be rendered."

█ The Commission, adopting the findings of the referee, held to the doctrine laid down in *Rocky Mountain Fuel Company v. Kruzic,* 94 Colo. 398, 30 P. (2d) 868, to the effect that a claimant must prove that the accident originated in a risk peculiar to the employment, and that to meet the tests set forth in the Workmen's Compensation Act there must be a causal connection between the employment and the injury.

In studying that case we find this apt language:

"To 'arise out of' the employment, unmistakably means that the cause of the accident was at all times 'in' the employment. It could not come out of it, unless it was first in it."

And further that: "* * * the test is whether or not there is a causal connection between the injury and the employment; that is, are they so connected that the injury naturally resulted from the employment. *Industrial Com. v. Pueblo Co.,* 71 Colo. 424, 207 Pac. 479."

Other cases supporting the findings of the Commission and the subsequent affirmation by the trial court are: *McKnight v. Houck,* 87 Colo. 234, 286 Pac. 279; *Gates Rubber Company v. Industrial Commission,* 112 Colo. 480, 150 P. (2d) 301.

Thus where the findings of the Commission are amply supported by the evidence and the law as here, they will not be disturbed by this Court on review.

The briefs of counsel in this case urge that we make a determination of the first point in claimant's demand for compensation — that is whether claimant was, at the time of his injury, an employee of The Denver Post. The Industrial Commission made no findings in this respect. In view of our conclusion that the finding on one point is sufficient to deny a claim, no good purpose would be served by remanding the case to the Commission for a finding on the other point since it is not determinative of the case. It was stated in *Metros v. Denver Coney Island,* 110 Colo. 40, 129 P. (2d) 911, that to sustain an award of compensation the Commission is required to make a finding of *all* of the essential facts required by the statute, C.R.S. '53, 81-13-2, i.e.: 1. That both employer and employee are subject to the provisions of the act; 2. That at the time of the accident the employee was performing services arising out of and in the course of his employment, and 3. That the injury was caused by an accident arising out of and in the course of the emplyoment. It was also stated, as the converse thereof, that "An award denying the compensation should follow a finding of the absence of *one* or more of such essential facts." (Emphasis supplied.) Here one of the essential facts, to-wit, an injury resulting from an accident arising out of and in the course of the employment, was missing, and its absence compelled a denial of the claim. Findings on the remaining requirements of the statute, whether pro or con, would not alter the result. An analysis of the Workmen's Compensation Act reveals that the ultimate issue to be determined in every case is whether or not the claimant is entitled to compensation.

The Commission is the only body or agency authorized to find the facts determinative of point 1. This court, on the other hand, is not a fact-finding body

and can only affirm or reverse the judgment of the lower court or, if the circumstances require, order a remand to the Commission for further findings. If a finding on point 1 might alter the result so as to entitle claimant to compensation, we would be required to order a remand of the case to the Commission for further proceedings. However, a finding on the point either way would make no difference in the result, and not being necessary to a decision, would be pure dictum. While interesting as a legal problem, it would have no value as a precedent. "Every opinion must be read in the light of its own facts and it is decisive only of the matters involved." *People v. Texas Co.,* 85 Colo. 289, 275 Pac. 896.

The judgment of the lower court in affirming the Commission was predicated upon a finding that the claimant did not sustain his burden of proof as to one vital prerequisite to recover.

The judgment is affirmed.

MR. JUSTICE SUTTON specially concurs.

MR. JUSTICE FRANTZ dissents.

MR. JUSTICE SUTTON specially concurring:

I concur in the result announced in the majority opinion based upon the record before us. However I agree with Mr. Justice Frantz in part in that I believe that the proper course of action on the part of the Commission in every case is to first determine whether it has jurisdiction over the parties before it pursuant to the statute — if it does not have, that ends the matter. Here, it being determined that Miller could not recover in any event, reversal to determine jurisdiction would be a fruitless act.

MR. JUSTICE FRANTZ dissenting:

The record before us requires, in my opinion, a reversal of the judgment with directions to the trial court

to remand the claim to the Commission; hence, I must respectfully dissent. My reasons for maintaining that a different disposition should have been made than that reached by the majority are fundamental and important. As I view the matter, two errors of omission were committed by the Commission in the determination of the claim.

Curtis H. Miller, a newspaper carrier, had been injured by another carrier under circumstances related in the majority opinion, and he filed his claim for compensation under the Workmen's Compensation Act. The Denver Post and its insuror filed a notice of contest. Two issues were presented to the Industrial Commission: 1) Was Miller an employee within the terms of the Act? 2) Did his injuries arise out of and in the course of his employment?

In disposing of the claim the Commission assumed, but declined to decide, that Miller was an employee of the Denver Post within the terms of the Act, and thereupon determined that the injuries which he sustained had not arisen out of and in the course of the assumed employment. In consequence of its holding the Commission denied compensation to Miller.

It seems elementary to me that before the Commission can say that an injury did not arise out of and in the course of an employment, it must decide that the premise (the relationship of employer and employee) existed where the latter is an issue. Morever, the Commission failed to consider pertinent law in passing on the question of whether the injury arose out of and in the course of the employment, affording an additional ground for reversal.

There is a right to compensation "where the following conditions occur:

(1) Where, at the time of the accident, *both employer and employee are subject to the provisions of this chapter;* and where the employer has complied with the provisions thereof regarding insurance.

"(2) Where, at the time of the accident, the employee is performing service arising out of and in the course of *his employment.*

"(3) Where the injury * * * is proximately caused by accident arising out of and in the course of *his employment,* . . ." (Emphasis supplied.) C.R.S. '53, 81-13-2.

Application of the Act depends initially, continually, and fundamentally upon the existence of an employment within the purview thereof. Liability of an employer under the Compensation Act "is predicated" on relationship. *Froid v. Knowles,* 95 Colo. 223, 36 P. (2d) 156. See *Metros v. Denver Coney Island,* 110 Colo. 40, 129 P. (2d) 911; *Industrial Commission v. Montgomery,* 95 Colo. 467, 37 P. (2d) 532. It should be noted that the first requisite of C.R.S. '53, 81-13-2, is an employer-employee relationship within the coverage of the Act, and that the other requisites envisage such relationship.

The existence of this relationship is jurisdictional. Its non-existence leaves the Commission powerless to determine any issue of the claim; and the assumption of its existence, without deciding that its exists, in order to decide another issue, is, and should be, of no avail, and held extra administrative.

"[E]very administrative body must determine for itself whether it has jurisdiction of the matter before it, *and especially so when its jurisdiction is challenged. Such determination is a necessary prerequisite to its further proceeding in the matter;* but does not constitute a judicial adjudication of its authority." (Emphasis supplied.) *Security State Bank v. State,* 169 S.W. (2d) 554 (Tex. Civ. App.) See *Special Indemnity Fund v. Quinalty,* 201 Okl. 204, 203 P. (2d) 713. "Whether a business enterprise or industry comes within the provisions of the act is a question of fact which must be determined affirmatively by the commission *before it is vested with jurisdiction to make an order or enter an award in any case."* (Emphasis supplied.) *Frates v. State*

*Industrial Commission,* 164 Okl. 60, 22 P. (2d) 905. See *Chicago Circular Advertising Service v. Industrial Commission,* 332 Ill. 156, 163 N.E. 408; *Bartlett v. American Mut. Liability Ins. Co.,* 47 Ga. App. 504, 170 S.E. 822.

Most persuasive of what I propose is the case of *Partin's Adm'r v. Black Mountain Corp.,* 237 Ky. 556, 36 S.W. (2d) 1. The Workmen's Compensation Board found that: 1) there was no employer and employee relationship, and 2) the accident did not arise out of and in the course of employment. After holding that jurisdiction could not be conferred by stipulation, the Court of Appeals of Kentucky said:

"This is not a case where there had been some effort on the part of the employee to come under the act, or where, by consent of the employer, he signed the compensation register after the injury. The employee as is shown by the evidence before the board, was not under the act, and nobody claimed that he was. It was probably true that both parties at the time of the stipulation thought that he was under the provisions of the act, but it developed that he was not, *and the board should have dismissed the claim for want of jurisdiction, but instead it heard the claim on the merits and reached the conclusion that the accident did not arise out of, or in the course of, Partin's employment.* That was necessarily true because he was not employed at all. His dependents had no right to seek compensation before the board, and for that reason the provisions of section 4882, Ky. St. have no application. The provisions in that section relate to persons operating under the provisions of the act, and not to a stranger to the act.

*"As the Workmen's Compensation Board was without jurisdiction, the order entered by it was a nullity. . . ."* (Emphasis supplied.)

The Industrial Commission of Colorado, being unknown to the common law, derives its authority wholly from the statute, and it possesses only such powers as are thereby conferred, expressly or by necessary and

clear implication, and such further powers as are appropriately incidental to carrying out its functions. Accordingly, convenience, expediency or necessity cannot be inducements to the exercise of its powers. *Industrial Commission v. Plains Utility Co.,* 127 Colo. 506, 259 P. (2d) 282; *Maryland Co. v. Industrial Commission,* 116 Colo. 58, 178 P. (2d) 426. "It cannot exercise any jurisdiction, exert any powers, perform any duties, *or assume any authority* unless the right so to do is given by statute." (Emphasis supplied.) *Maryland Co. v. Industrial Commission,* supra.

Assuming without deciding the employment relation in order to pass upon another issue, was the assumption of an authority which should not receive our sanction. When an issue in the case, the Commission may not assume the existence of the employer-employee relationship, but should make its finding thereon before determining any other issue.

Jurisdiction of a function not authorized by statute cannot be bestowed upon the Commission by consent or agreement; nor can the Commission assume jurisdiction in order to make an adverse determinative finding on a principal facet of the claim, the resolution of which concludes the claim. To give our approval to an exercise of jurisdiction by the consent or agreement of the parties or by assumption thereof by the Commission is to thwart the plain mandate of the statute.

Nothing will be presumed in favor of the Commission's jurisdiction. It must affirmatively appear, and the attempted exercise of jurisdiction by determining another issue, conclusive of the whole claim, does not imply the existence of facts necessary to confer it. See *Special Indemnity Fund v. Quinalty,* supra.

Could the Commission assume, without deciding the issue, that it had jurisdiction of a common carrier by railroad, and then hold that the employee was not injured in an accident arising out of and in the course of his employment? C.R.S. '53, 81-2-8. Could the Commis-

sion in the instant case upon the same assumption have found that the injury arose out of and in the course of the employee's employment? It may be said that these are extreme illustrations, "but, as was once said by Chief Justice Shaw, 'it is necessary to put extreme cases to test a principle.'" *Denver v. Coulehan,* 20 Colo. 471, 39 Pac. 425, 27 L.R.A. 751.

Miller had retrieved the aerial shortly before the incident in question. At the time he had warned the carrier who had removed it to leave it alone. It was later removed and Miller again set out to retrieve it, during the course of which he received the serious injury forming the basis of this claim. An injury may be an "accidental injury" within the meaning of the Act, although resulting from horseplay of co-employees, from the viewpoint of the employer and the injured employee. *Industrial Commission v. Pueblo Auto Co.,* 71 Colo. 424, 207 Pac. 479, 23 A.L.R. 348.

If the Compensation Act is applicable, jurisdiction is exclusively in the Commission. It had original, exclusive jurisdiction to determine the existence of the three conditions necessary to permit recovery under the Act. In the first instance it was within the sole province of the Commission to resolve whether the relationship of employer-employee existed at the time of the injury. C.R.S. '53, 81-13-2 and 81-3-2; *Hartford Accident & Indemnity Co. v. Clifton,* 117 Colo. 547, 190 P. (2d) 909.

By reason thereof the majority opinion may result in a denial of any remedy to Miller for his serious injury. The decision leaves the question of the relationship undecided. Should Miller bring a civil suit for damages, a frustrating situation, indeed, may arise. Whether the relationship of employer and employee under the Act existed, upon the resolution of which would depend the question of compensability, is a matter solely within the jurisdiction of the Commission to decide; the court in the civil suit, it is seriously doubted, would have the authority to pass upon the question. This leaves a no-

man's land in which Miller is without compass, and from which he has no means of extrication.

What is the working environment where a number of boys are gathered? Does the employment of a number of boys create a condition in which the propensities for fun-making become an incident of the employment?

"* * * Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. * * * The claimant was injured, not merely while he was in a factory, but because he was in a factory, *in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment.*" (Emphasis supplied.) *Leonbruno v. Champlain*, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522.

"In the case under consideration, it appears that the prosecutor employed young men and boys. It is but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman is a matter of common knowledge to every one who employs labor. At any rate, it cannot be said that the attack made upon the decedent was so disconnected from the decedent's employment as to take it out of the class of risks reasonably incident of the employment of labor." *Hulley v. Moosbrugger,* 87 N.J.L. 103, 93 Atl. 79.

The philosophy of this "advanced position" (159 A.L.R. 332) is stated with clarity in the leading case of *Hartford Acc. & Ind. Co. v. Cardillo,* 112 F. (2d) 11:

"Recognition that this is so came more easily as to physical than as to human forces. As with street risks, the early disposition in cases of human action was to emphasize the particular act and its nature, except anomalously when it involved merely negligence of the

claimant or fellow employees. The statutory abolition of common law defenses made easy recognition of the accidental character of negligent acts by the claimant and fellow servants. The extension to their accidental (i.e., nonculpable but injurious) behavior was not difficult. So with that of strangers, including assault by deranged persons, and their negligence intruding into the working environment. But these extensions required a shift in the emphasis from the particular act and its tendency to forward the work to its part as a factor in the general working environment. The shift involved recognition that the environment includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional makeup. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. Work could not go on if men became automatons repressed in every natural expression. "Old Man River" is a part of loading steamboats. These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment."

See also *Chambers v. Union Oil Co.,* 199 N.C. 28, 153 S.E. 594; *Cassell v. U. S. Fidelity & Guaranty Co.,* 115 Tex. 371, 283 S.W. 128; *Pacific Emp. Ins. Co. v. Industrial Accident Commission,* 26 Calif. (2d) 286, 158 P. (2d) 9, 159 A.L.R. 313.

It thus appears to me that the Commission should have first determined whether the relationship within the terms of the Act existed, and if it found the relationship

did exist, should then have made findings and determination as to whether the skylarking was under the law an incident of the employment.