DEE ENTERPRISES, d/b/a D & D Electric; and Mid–Century Insurance Company, Petitioners,

v.

INDUSTRIAL CLAIM APPEALS OF-FICE OF the STATE OF COLORADO and Ronald Nations, Respondents.

No. 02CA2040.

Colorado Court of Appeals, Div. I.

July 31, 2003.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Joel N. Varnell & Associates, Chris Forsyth, Denver, Colorado, for Petitioners.

No Appearance for Respondent Industrial Claim Appeals Office.

Bisset Law Firm, Jennifer Bisset, Denver, Colorado, for Respondent Ronald Nations.

Opinion by Chief Judge DAVIDSON.

In this workers' compensation proceeding, Dee Enterprises and its insurer, Mid–Century Insurance Company (collectively employer), seek review of the final order issued by the Industrial Claim Appeals Office (Panel) upholding the order of the administrative law judge (ALJ) finding that Ronald Nations (claimant) had suffered a compensable injury and awarding him benefits. We affirm.

## I. Constitutionality

On appeal, employer's primary contention is that §§ 8–43–201 and 8–43–301, C.R.S. 2002, of the Workers' Compensation Act (Act), are unconstitutional. Specifically, employer argues that these statutes violate both the doctrine of separation of powers, under article III of the Colorado Constitution, and the requirement that district courts have original jurisdiction in civil cases, as mandated in article VI, § 9(1). We conclude that employer has failed to establish beyond a reasonable doubt that the Act violates these provisions of the Colorado Constitution.

■ Preliminarily, we agree with employer that this court has original jurisdiction to address challenges to the constitutionality of the Act. The standard of review is de novo, and because statutes are presumed to be constitutional, the challenging party bears the burden of proving them unconstitutional beyond a reasonable doubt. Thus, as relevant here, when the General Assembly creates an administrative agency and provides it specific powers pursuant to the state's police power, the agency's exercise of those powers within the scope of its authority is presumed to be valid and constitutional. *MGM Supply Co. v. Indus. Claim Appeals Office,* 62 P.3d 1001 (Colo.App.2002).

### A. Police Power

■ The General Assembly created the Act as a substantive right pursuant to its police power. *See Sch. Dist. No. 1 v. Indus. Comm'n,* 66 Colo. 580, 185 P. 348 (1919). The Act is a mutual renunciation of common law tort claims and defenses in favor of a no-fault system with reduced but guaranteed benefits. *Whiteside v. Smith,* 67 P.3d 1240 (Colo.2003). The Act is the exclusive remedy for workers injured within the scope and course of their employment and precludes employees from bringing tort actions against their employers. Section 8–41–102, C.R.S. 2002; *Kandt v. Evans,* 645 P.2d 1300 (Colo. 1982).

The constitutionality of all types of workers' compensation acts generally has been firmly established. 1 Arthur Larson & Lex

K. Larson, *Larson's Workers' Compensation Law* § 2.07, at 2–14 (2002). Indeed, the legislature has broad discretion to enact measures for the protection of the public health, safety, and welfare, so long as the remedy adopted is rationally related to a legitimate governmental purpose. *See Young v. Indus. Claim Appeals Office*, 969 P.2d 735 (Colo. App.1998). It is well established that the employer-employee relationship involves a vital public interest and that there is a need for its regulation. *See Corcoran v. P.G. Corcoran Co.*, 245 Minn. 258, 71 N.W.2d 787 (1955).

## B. Separation of Powers

Section 8–43–201 of the Act confers jurisdiction on ALJs to hear and determine workers' compensation matters, and § 8–43–301 provides the Panel with jurisdiction to review the ALJs' orders. Employer contends that these provisions violate the constitutional separation of powers doctrine by conferring judicial authority on an administrative agency that is part of the executive branch. We disagree.

Article III of the Colorado Constitution prohibits one branch of government from exercising powers that the constitution vests in another branch. *People v. Barth*, 981 P.2d 1102 (Colo.App.1999). The separation of powers doctrine does not require a complete division of authority among the three branches, however, and the powers exercised by different branches of government necessarily overlap. *People in Interest of R.W.V.*, 942 P.2d 1317, 1320 (Colo.App.1997)("absolute separation of government functions among the co-equal branches is neither required nor desirable to achieve the constitution's ultimate goal of effective and efficient government"); *Nev. Indus. Comm'n v. Reese*, 93 Nev. 115, 560 P.2d 1352 (1977)(because an administrative agency exercises executive, judicial, and legislative power, a strict application of the separation of powers doctrine would make the mere existence of an agency unconstitutional); *McKay v. N.H. Comp. Appeals Bd.*, 143 N.H. 722, 732 A.2d 1025 (1999)(separation of powers doctrine requires some overlapping and duality as a matter of practical and essential expediency). Indeed, the fundamental purpose of the doctrine is not to create three mutually exclusive departments of government, but to prevent one department from exercising power that is essential to another department's exercise of its constitutionally defined functions. *Colo. Gen. Assembly v. Lamm*, 700 P.2d 508 (Colo.1985).

Employer maintains, however, that pursuant to §§ 8–43–201 and 8–43–301, ALJs and the Panel have the power to enforce workers' compensation orders. According to employer, these orders involve private rights stemming from common law, and their rulings are binding without the parties' consent. Consequently, employer argues, ALJs and the Panel exercise functions essential to the judicial branch, in violation of article III. We disagree.

### 1. Judicial Power

Traditionally, judicial power has been defined as consisting of three elements: (1) examination of the "truth of the fact," (2) determination of the "law arising upon that fact," and (3) ascertainment and application of the remedy. *See, e.g., Union Colony v. Elliott*, 5 Colo. 371 (1880)(citing Justice Blackstone). Not every exercise of duties judicial in nature, however, is necessarily an exercise of "judicial power." Indeed, many administrative officials are required to make determinations of fact and apply the law thereto. It is generally agreed that the essence of judicial power is the ability to carry a judgment into effect. *See Firelock Inc. v. Dist. Court*, 776 P.2d 1090, 1094 (Colo.1989); *Cedar Rapids Human Rights Comm'n v. Cedar Rapids Cmty. Sch. Dist.*, 222 N.W.2d 391 (Iowa 1974).

### a. Quasi–Judicial Power

We agree with employer that an administrative agency cannot validly exercise a purely judicial function. *See City & County of Denver v. Lynch*, 92 Colo. 102, 106, 18 P.2d 907, 909 (1932) ("It is universally held that the legislative department is powerless to confer judicial duties upon the officials of other departments."). However, the agency may nevertheless possess quasi-judicial powers that blend legislative and judicial charac-

teristics, so long as the legislature retains authority to effectively change the agency's rules and the courts can effectively correct errors made in the determination of cases. *See* 1 Frank E. Cooper, *State Administrative Law* 17 (1965).

Here, the General Assembly has granted to ALJs and the Panel quasi-judicial power with limited jurisdiction to conduct administrative hearings, make findings, and render administrative decisions thereon, in workers' compensation claims arising between an employer and employee. *See Ontario Mining Co. v. Indus. Comm'n,* 86 Colo. 206, 280 P. 483 (1929). But this exercise of judgment and discretion does not involve pure judicial power in the constitutional sense. *Cf. People ex rel. Hubbard v. Colo. Title & Trust Co.,* 65 Colo. 472, 178 P. 6 (1918)(public utilities commission's exercise of judgment and discretion as incidental to the administration of law is not the exercise of judicial power within the meaning of article III); *Am. Sulphur & Mining Co. v. Brennan,* 20 Colo.App. 439, 446, 79 P. 750, 752 (1905)("mere fact that duties are imposed upon officers which require the exercise of judgment and discretion does not of itself render their proceedings conducted in pursuance of their authority judicial, in the sense in which the term is used in the Constitution"); *Goodrum v. Asplundh Tree Expert Co.,* 824 S.W.2d 6 (Mo.1992)(citing *De May v. Liberty Foundry Co.,* 327 Mo. 495, 37 S.W.2d 640 (1931); commission is not vested with judicial power in the sense in which the term is used in article III); *Wylie Corp. v. Mowrer,* 104 N.M. 751, 726 P.2d 1381 (1986)(workers' compensation commission is no more "purely judicial" than are other administrative agencies); *Mallatt v. Luihn,* 206 Or. 678, 294 P.2d 871 (1956)(administrative officials do not exercise judicial power in the traditional sense of the word).

■ Employer's contention to the contrary notwithstanding, neither an ALJ nor the Panel has the power to carry a judgment into effect. By the specific terms of the Act, only a court of competent jurisdiction has the power to enforce the payment of orders issued by ALJs or the Panel by reducing such an award to judgment. *See* § 8–43–304, C.R.S.2002 (any employer or insurer who refuses to obey a lawful order issued by an ALJ or the Panel shall be subject to the order reduced to judgment by a court of competent jurisdiction); § 8–43–408(3), C.R.S.2002 (certified copy of an award of director, ALJ, or Panel may be filed with the clerk of the district court, the recording of which shall have all the effect of a judgment of the district court); *Hard v. Indus. Comm'n,* 174 Colo. 51, 482 P.2d 353 (1971); *Passaretti v. Indus. Comm'n,* 711 P.2d 1285 (Colo.App.1985).

Thus, the awards and determinations of ALJs and the Panel, including any penalties imposed, lack judicial finality because they are not enforceable by execution or other proceedings, *see* C.R.C.P. 69, until a district court enters a binding judgment thereon. *See Cedar Rapids Human Rights Comm'n v. Cedar Rapids Cmty. Sch. Dist., supra* (when the school district failed to comply with the commission's orders, it was necessary to file a petition with the district court to order compliance; the commission was without final authority to decide and render an enforceable judgment).

The General Assembly has explicitly made the exercise of the powers conferred upon ALJs and the Panel subordinate to the judiciary by providing for a review as of right by this court for errors of law and findings of fact that are unsupported by the evidence. *See* §§ 8–43–307, 8–43–308, C.R.S.2002; *cf. Larrick v. N. Kiowa Bijou Mgmt. Dist.,* 181 Colo. 395, 510 P.2d 323 (1973)(because the ground water commission's determinations are appealable to the courts, no violation of separation of powers); *Carrillo v. Compusys, Inc.,* 122 N.M. 720, 930 P.2d 1172 (N.M.Ct.App.1996)(workers' compensation administration is not part of the judiciary as appeals are taken from orders of the worker's compensation judge to the judiciary).

Therefore, we conclude that §§ 8–43–201 and 8–43–301 of the Act do not undermine the purpose of article III by preventing the judicial branch of government from exercising power that is essential to its proper functioning. Indeed, the Act no more confers pure judicial authority upon the workers' compensation commission than do the statutory schemes granting quasi-judicial authori-

ty to Colorado's public utilities commission, board of land commissioners, and many other administrative agencies that have been upheld as constitutional. *See People ex rel. Hubbard v. Colo. Title & Trust Co., supra* (public utilities commission); *Am. Sulphur & Mining Co. v. Brennan, supra* (board of land commissioners); *see also Firelock Inc. v. Dist. Court, supra.*

### b.  Private Rights

Relying on *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), and *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), employer next contends that even if ALJs and the Panel do not exercise judicial power in the constitutional sense of the term, they are nonetheless prohibited by the doctrine of separation of powers from making "nonjudicial determinations of fact and law" in matters involving private rights arising out of common law, which, according to employer, include workers' compensation cases.  We agree with employer that the considerations underlying Article III of the United States Constitution are similar and therefore relevant to an analysis of the doctrine of separation of powers under article III of the Colorado Constitution.  *See State v. Pena*, 911 P.2d 48, 55 n. 10 (Colo. 1996).  However, when we analyze these decisions of the United States Supreme Court in light of the more adaptive approach set forth by the Court in subsequent opinions, we cannot conclude that the Act involves purely private rights.

The public rights doctrine was first set forth in *Den v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372 (1855), in which the Supreme Court stated that "there are matters involving public rights which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which [C]ongress may or may not bring within the cognizance of the courts of the United States, as it may deem proper."  Thus, pursuant to the powers conferred upon it, Congress may create "legislative courts" to serve as "special tribunals to examine and determine various

matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it." *Ex parte Bakelite Corp.*, 279 U.S. 438, 451, 49 S.Ct. 411, 413, 73 L.Ed. 789 (1929).  ·

The rationale behind the doctrine was that because Congress is free to delegate such matters to nonjudicial executive determination, "there can be no constitutional objection to Congress' employing the less drastic expedient of committing their determination to a legislative court or an administrative agency."  Indeed, the public rights doctrine is based upon a distinction between matters that could be determined by the executive and legislative branches and matters that are "inherently judicial."  Congress cannot "withdraw from [Art. III] judicial cognizance *any* matter which, *from its nature*, is the subject of a suit at the common law." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co., supra*, 458 U.S. at 68–70, 102 S.Ct. at 2870–71 (citing *Den v. Hoboken Land & Imp. Co., supra*, 59 U.S. at 284).

In *Crowell v. Benson, supra*, the Court went beyond its previous cases, however, in ratifying initial adjudication by non-Article III judges in private rights cases, so long as the "essential attributes" of judicial power remained in an Article III court.  To retain the "essential attributes" of decisionmaking in an Article III court, *Crowell* insisted upon de novo review of the agency's factual and legal decisions.

Subsequently, in *Northern Pipeline*, the Supreme Court held unconstitutional the authority granted to non-Article III bankruptcy judges under the Bankruptcy Act of 1978.  That Act had enabled bankruptcy judges to adjudicate common law rights involving debtors, to render final judgments, and to issue binding orders, without the litigants' consent and subject only to deferential appellate review.  The Court stated that Congress can create agencies as adjuncts to Article III judges, but that the "essential attributes" of initial decisionmaking must remain with Article III courts.  The court concluded appellate review by an Article III judge did not satisfy this standard.

The decision in *Northern Pipeline* was sharply criticized. Commentators argued that the Court's holding was rigid, unworkable, and out of touch with the needs and practices of the modern administrative state, and that administrative agencies routinely adjudicate private as well as public disputes. In few cases, if any, did an Article III court exercise more than appellate review and they argued that if the Court adhered to the plurality opinion in *Northern Pipeline,* many accepted administrative agencies could not be justified.

The Court decided *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 587–88, 105 S.Ct. 3325, 3336, 87 L.Ed.2d 409 (1985), against this backdrop of criticism and concern. *See* Richard H. Fallon, Jr., *Of Legislative Courts, Administrative Agencies, and Article III,* 101 Harv. L.Rev. 915, 929 (1988).

In *Thomas,* recognizing that a strict construction of Article III was not possible "in this area of 'frequently arcane distinctions and confusing precedents,'" the Supreme Court upheld as constitutional the power granted to non-Article III arbitrators to make final decisions on compensation claims submitted to the Environmental Protection Agency, subject to review by an Article III court only for "fraud, misrepresentation, or other misconduct." The Court stated that pursuant to its constitutional powers under Article I, Congress "may create a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Thomas v. Union Carbide Agric. Prods. Co., supra,* 473 U.S. at 593–94, 105 S.Ct. at 3339–40.

The Court distinguished *Thomas* from *Northern Pipeline* on the basis that the right to compensation under the statutory scheme in *Thomas* did not replace a right to such compensation under traditional common law. *Thomas v. Union Carbide Agric. Prods. Co., supra,* 473 U.S. at 584, 587, 105 S.Ct. at 3334, 3336; *cf. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., supra* (contract claims at issue were a matter of state law); *Crowell v. Benson, supra* (replacing traditional admiral-ty negligence action with administrative workers' compensation scheme); *see also Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)(risk that Congress may have improperly encroached upon the judicial branch is magnified when Congress withdraws from an Article III court matters which are the subject of suit at common law and grants the decision of these matters to non-Article III tribunals).

The Court was also persuaded that the statutory scheme did not violate separation of powers because, although the dispute involved two private parties, it had many of the characteristics of a public rights case. The Court noted that the rights asserted were purely statutory and arose from a regulatory scheme designed to promote the public purpose of safeguarding the public health. *Thomas v. Union Carbide Agric. Prods. Co., supra,* 473 U.S. at 589, 105 S.Ct. at 3337.

■ Similarly, in the workers' compensation scheme at issue here, the rights provided by the Act are purely statutory, *Peterkin v. Indus. Comm'n,* 698 P.2d 1353 (Colo.App. 1985), *aff'd,* 729 P.2d 977 (Colo.1986); *Indus. Comm'n v. Carpenter,* 102 Colo. 22, 76 P.2d 418 (1938), and did not exist at common law, *Chartier v. Winslow Crane Serv. Co.,* 142 Colo. 294, 350 P.2d 1044 (1960); *Miller v. Denver Post, Inc.,* 137 Colo. 61, 322 P.2d 661 (1958); *Indus. Comm'n v. Plains Util. Co.,* 127 Colo. 506, 259 P.2d 282 (1953).

Prior to the Act, employees injured in the course of employment were required to prove negligence on the part of their employer in order to recover for injuries. Since the Act was enacted, employees may recover compensation from their employers for job-related injuries regardless of fault. *See Frohlick Crane Serv., Inc. v. Mack,* 182 Colo. 34, 510 P.2d 891 (1973); *Colo. Springs Disposal v. Indus. Claim Appeals Office,* 58 P.3d 1061 (Colo.App.2002)(Act provides compensation to employee even though he or she may be negligent and employer is not negligent; employer is immunized from tort claims because it assumes burden of compensating employees for all work-related injuries).

The Act defines both the terms of compensation to the injured employee and the procedures for arriving at the proper amount of compensation. *Cf. Thomas v. Union Carbide Agric. Prods. Co., supra.* ALJs and the Panel possess only such power as is conferred upon them by the Act, and they "cannot exercise any jurisdiction, exert any powers, perform any duties, or assume any authority unless the right so to do is given [them] by statute." *Miller v. Denver Post, Inc., supra,* 137 Colo. at 69–70, 322 P.2d at 665 (quoting *Md. Cas. Co. v. Indus. Comm'n,* 116 Colo. 58, 178 P.2d 426 (1947)); *cf. Pub. Utils. Comm'n v. Colo. Motorway, Inc.,* 165 Colo. 1, 437 P.2d 44 (1968)(public utilities commission is a creature of statute whose power and scope of authority is controlled by the act upon which it relies).

As in *Thomas,* the Colorado workers' compensation scheme has many characteristics of a public rights case and serves the legitimate purpose of safeguarding the public health. The danger to public health of workers who are injured in industrial activities led the General Assembly to enact the workers' compensation scheme as an appropriate method of dispute resolution. *See In re Hampton v. Dir. of Div. of Labor,* 31 Colo.App. 141, 500 P.2d 1186 (1972).

Given the nature of the right at issue and the concerns motivating the General Assembly, we conclude that granting ALJs and the Panel the task of hearing and determining workers' compensation matters does not diminish the likelihood of impartial decisonmaking, nor does it threaten the role of the judiciary. To hold otherwise would "defeat the obvious purpose of the legislation to furnish a prompt, continuous, expert and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task." *Thomas v. Union Carbide Agric. Prods. Co., supra,* 473 U.S. at 590, 105 S.Ct. at 3338 (quoting *Crowell v. Benson, supra,* 285 U.S. at 46, 52 S.Ct. at 291); *see also State v. Esser,* 30 P.3d 189 (Colo.2001)(purpose of Act is to compensate injured workers, while controlling costs and minimizing claim delays).

Moreover, we note, in *Thomas,* the Court found that the statutory scheme, which provided limited review by an Article III court of the arbitrator's findings and determinations for fraud, misconduct, or misrepresentation, was sufficient to preserve the appropriate exercise of judicial function by protecting against arbitrators who abuse or exceed their powers. Thus, pursuant to the decision in *Thomas,* de novo review is no longer required. *Thomas v. Union Carbide Agric. Prods. Co., supra,* 473 U.S. at 592, 105 S.Ct. at 3339.

Similarly, here, review by this court of the Panel's final orders for errors of law and abuse of discretion is sufficient to protect the proper exercise of judicial function. This scheme is consistent with the purpose of the Act, which is to avoid congestion of the courts with piecemeal litigation and to provide a method whereby claims arising out of work-related injuries can be resolved in a just and speedy manner. *See Indus. Comm'n v. Globe Indem. Co.,* 145 Colo. 453, 358 P.2d 885 (1961); *cf. Huizar v. Allstate Ins. Co.,* 952 P.2d 342 (Colo.1998)(de *novo* review of workers' compensation claims not required).

#### c. Consent

Employer maintains, however, that even under the rationale of more recent pronouncements of the Supreme Court, §§ 8–43–201 and 8–43–301 nevertheless violate Article III because the parties to workers' compensation proceedings do not have the option of consenting to a hearing and determination by an ALJ. We disagree.

Employer relies primarily on *Commodity Futures Trading Commission v. Schor, supra.* In that case, the Supreme Court upheld the authority of the commission because parties had the option to resolve their disputes administratively or in district court. However, the Court explained that, in determining the extent to which a statute conferring adjudicatory power to a non-Article III tribunal encroaches upon the judicial branch, it was necessary to weigh a number of factors, "with an eye to the practical effect that the congressional action will have on the constitutionally assigned role of the federal

judiciary." *Commodity Futures Trading Comm'n v. Schor, supra,* 478 U.S. at 851, 106 S.Ct. at 3257. Among the factors cited were: (1) the extent to which the essential attributes of judicial power are reserved to Article III courts, (2) the extent to which non-Article III courts exercise the range of jurisdiction and power normally vested only in Article III courts, (3) the origins and importance of the right to be adjudicated, and (4) the concerns that prompted Congress to depart from the requirements of Article III.

The Court noted that "bright-line rules cannot effectively be employed to yield broad principles applicable in all Article III inquiries," and that "due regard must be given in each case to the unique aspects of the congressional plan at issue and its practical consequences in light of the larger concerns that underlie Article III." *Commodity Futures Trading Comm'n v. Schor, supra,* 478 U.S. at 857, 106 S.Ct. at 3260. The Court did not reveal, however, the extent to which a congressional scheme impermissibly threatens the integrity of the judicial branch when, as here, the litigants have not consented to the administrative agency's jurisdiction.

■ Nevertheless, we are convinced that §§ 8–43–201 and 8–43–301 leave far more of the "essential attributes of judicial power" to Colorado courts than did that portion of the Bankruptcy Act found unconstitutional in *Northern Pipeline.* The Colorado Act, like the agency model approved in *Crowell* and *Schor,* deals only with a particularized area of law, and the rights to be adjudicated in the employer-employee relationship are of great importance to the public health and welfare in that they provide a method by which workers' compensation matters may be speedily and justly resolved. Indeed, the General Assembly created the Act to provide quick and efficient delivery of benefits for job-related injuries. *Serna v. Kingston Enters.,* 72 P.3d 376 (Colo.App.2002).

Further, ALJs and the Panel, unlike the bankruptcy courts in *Northern Pipeline,* do not exercise all the ordinary powers of courts. They may not, inter alia, preside over jury trials or issue sanctions for contempt. *See* § 8–43–207(1)(p), C.R.S.2002 (ALJ cannot impose sanctions for contempt

for willful failure to comply with an order imposed by the ALJ).

### 2. Conclusion

Our conclusion that the General Assembly's grant of limited authority in §§ 8–43–201 and 8–43–301 to ALJs and the Panel over the area of workers' compensation matters does not create a substantial threat to the separation of powers is consistent with authority in the majority of other jurisdictions. *See Medina v. Gulf Coast Linen Servs.,* 825 So.2d 1018 (Fla.Dist.Ct.App.2002)(legislature's investment in the judge of compensation claims of authority to determine whether claimant has committed fraud in obtaining compensation benefits did not violate separation of powers as judge merely determined worker's entitlement to benefits); *Breimhorst v. Beckman,* 227 Minn. 409, 35 N.W.2d 719 (1949)(vesting by the legislature in the industrial commission of quasi-judicial powers, including the power to determine facts and apply the law thereto, does not violate separation of powers doctrine, as long as the commission's awards and determinations are subject to court review and are not enforceable by execution in the absence of a binding court judgment); *Walters v. Blackledge,* 220 Miss. 485, 71 So.2d 433 (1954)(Mississippi workmen's compensation law does not violate separation of powers doctrine, as boards or commissions are merely administrative agencies that do not have final authority to decide and render enforceable judgments); *McKay v. N.H. Comp. Appeals Bd., supra* (workers' compensation act's compelled adjudication of the underlying facts by an administrative body does not offend the separation of powers doctrine); *Carrillo v. Compusys, Inc., supra* (workers' compensation administration was created by statute to provide administrative system for quasi-judicial adjudication of disputes arising from job-related injuries; vesting that power administratively, instead of in the courts, does not threaten the constitutional separation of powers reserved to the judiciary); *Evanhoff v. State Indus. Accident Comm'n,* 78 Or. 503, 154 P. 106 (1915)(statute creating state industrial accident commission composed of three commissioners who were

charged with the administration of the act did not contravene the state constitution's declaration of separation of powers).

### C. District Court Original Jurisdiction

Employer also contends that § 8–43–201, which confers jurisdiction upon ALJs to hear and decide all matters arising under the Act, conflicts with Colorado Constitution article VI, § 9(1). Again, we disagree.

Article VI, § 9(1) provides, as pertinent here, that "district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein." Although this constitutional provision confers broad jurisdiction on district courts, the General Assembly may limit that jurisdiction. *See State v. Borquez,* 751 P.2d 639 (Colo.1988).

In *MGM Supply Co. v. Industrial Claim Appeals Office, supra,* a division of this court concluded that § 8–43–201 does not violate article VI, § 9(1). We agree with the rationale of that decision and find it to be dispositive. Workers' compensation cases are not ordinary civil disputes between "private parties litigating private rights" that must be resolved in a trial court. The parties in workers' compensation actions have expressly surrendered their common law rights, remedies, and proceedings in exchange for the benefits of the Act, which did not exist at common law—specifically, compensation to the employee for job-related injuries regardless of fault and immunity for the employer from common law claims. *See Frohlick Crane Serv., Inc. v. Mack, supra; MGM Supply Co. v. Indus. Claim Appeals Office, supra.*

Contrary to employer's contention, *Moore v. Roemer,* 560 So.2d 927 (La.Ct.App.), *aff'd,* 567 So.2d 75 (La.1990), *superseded by constitution as stated in Pope v. State,* 792 So.2d 713 (La.2001), is inapplicable here. There, the court determined that workers' compensation claims are civil matters within the original jurisdiction of the district court. The court concluded that the language in Louisiana's workers' compensation statute that costs in workers' compensation matters may be awarded "as in other civil proceed-ings" indicated an intent by the legislature that the worker's compensation scheme was a civil proceeding.

■■■ Here, however, employer has failed to point out, and we are unaware of, any similar provision indicating an intent by the General Assembly that Colorado workers' compensation matters be civil proceedings.

Thus, we conclude that employer has failed to overcome the presumption that § 8–43–201 is valid and constitutional, and the ALJ's order will not be set aside on this basis.

### II. Abuse of Discretion

Employer also challenges the Panel's order as an abuse of discretion. We disagree.

### A. Causation

Claimant alleged that he was injured on March 21, 2001, when the pliers he was using came loose, hit him in the face, and knocked him backwards, resulting in injury to his lip and a broken dental bridge. Claimant subsequently alleged that the injury aggravated his preexisting neck and shoulder pain.

At the hearing, employer presented the results of an independent medical examination (IME), which concluded that there was no causal connection between the industrial accident and claimant's neck condition. The IME physician opined that MRI test results indicated claimant's complaints were consistent with a degenerative disease of the cervical spine and that there were no objective studies suggesting a causal relationship between the work incident and claimant's neck problems.

On claimant's motion, the ALJ ruled that the record would remain open, giving claimant the opportunity to rebut the opinion of the IME physician with deposition testimony from his own expert, who was also his treating neurologist.

Claimant's expert admitted that the MRI studies from 1999 and 2001 showed no apparent structural change in the cervical spine. However, the expert opined that both MRI and EMG testing would not necessarily provide objective findings even when a serious injury had been sustained. Relying upon

claimant's report of significant changes following the accident, the expert concluded that it had contributed to the progression of claimant's neck and upper extremity problems.

Crediting the testimony of claimant and his expert, the ALJ found it more probable than not that the industrial injury had aggravated and accelerated claimant's preexisting cervical problems and caused the need for further medical treatment. The ALJ also concluded that other medical evidence in the record supported the expert's opinions. Therefore, the ALJ determined that claimant had sustained his burden of proof that a compensable aggravation of his preexisting cervical condition had occurred.

The Panel upheld the ALJ's determination on review.

## B. Prehearing Order

Employer contends that the ALJ erred in allowing claimant to submit the rebuttal testimony of his expert after the hearing and in failing to enforce a prehearing order, which required all depositions to be completed prior to the evidentiary hearing. We disagree.

The prehearing order at issue here directed any party who had a problem filing a medical deposition within the established time constraints prior to the evidentiary hearing to schedule another prehearing. It is undisputed that claimant did not request another preliminary hearing before he filed a motion seeking permission to submit the posthearing deposition of his expert. However, his motion was filed in response to employer's motion to endorse the IME physician as a witness, which was granted over claimant's objection, only eight days before the hearing. In his motion, claimant asserted that he had not yet received the IME report and that he anticipated it would necessitate rebuttal testimony from his medical expert. Claimant also stated that his expert would not be available to testify until after the hearing date, which had been rescheduled pursuant to a continuance requested by employer.

Claimant did not receive the IME report until the day before the hearing. He orally renewed his motion at the hearing and stipulated that employer could also submit rebuttal testimony by posthearing deposition. Taking note of his discretionary authority to permit posthearing depositions, the ALJ granted claimant's motion.

Employer argues that the prehearing order issued by the preliminary administrative law judge (PALJ) was binding on the parties and the law of the case. Employer asserts that by failing to defer to that order, the ALJ improperly nullified it. We are not persuaded.

As the Panel pointed out in its order, § 8–43–207(1)(i), C.R.S.2002, provides that upon written motion an ALJ may grant reasonable extensions of time for the taking of any action contained in this article if good cause is shown. Section 8–43–207(1)(j), C.R.S.2002, also authorizes an ALJ to adjourn a hearing to a later date for the taking of additional evidence for good cause shown. Dep't of Labor & Employment Rule VIII(I)(2), 7 Code Colo. Regs. 1101–7, permits the ALJ to admit deposition testimony prior to the conclusion of the hearing.

As the Panel concluded, an ALJ may admit a posthearing deposition as was done in this case. *See IPMC Transp. Co. v. Indus. Claim Appeals Office,* 753 P.2d 803 (Colo. App.1988)(the ALJ has wide discretion in the conduct of evidentiary proceedings, including the decision to permit the taking of posthearing evidence). Further, the admission of posthearing evidence may be necessary to satisfy the requirements of due process where such evidence may affect the outcome of a claim for benefits. *See Potomac Ins. Co. v. Indus. Comm'n,* 744 P.2d 765 (Colo.App.1987)(hearing officer properly accepted additional testimony following remand where it was necessary to determine whether coverage existed).

■ We conclude that good cause was established to support the ALJ's determination that such evidence would be accepted. Although the expedited time frame was imposed pursuant to claimant's request, that did not diminish his right to due process. *See Delaney v. Indus. Claim Appeals Office,* 30 P.3d 691 (Colo.App.2000)(claimant given

opportunity to submit division-sponsored IME report after hearing where permanent benefits were at issue, even though she resisted employer's request for a continuance).

Although the orders of a PALJ are binding upon the parties, see § 8–43–207.5(3), C.R.S. 2002, the statute does not confer exclusive jurisdiction in the PALJ to determine discovery matters or evidentiary disputes. Pursuant to § 8–43–207.5(1), C.R.S.2002, a prehearing conference may be requested any time, but at least ten days prior to the formal adjudication on the record before an ALJ. In view of the timing of the IME report, it would have been impractical, if not impossible, for claimant to have requested a prehearing conference.

Employer has presented no authority which convinces us that an ALJ lacks authority to override the ruling of a PALJ, and we conclude that the circumstances occurring here after the prehearing order lessened its binding effect. Not only was the ALJ presented with claimant's renewed request at the hearing, but that request was necessitated by time constraints arising immediately prior to the hearing, and the request involved evidence having the potential to affect the outcome. Thus, the ALJ did not abuse his discretion in granting claimant's motion.

Employer relies on *People v. Trujillo*, 784 P.2d 788 (Colo.1990), and *People v. Jordan*, 891 P.2d 1010 (Colo.1995), for the proposition that deference must be accorded an interlocutory order. But, these cases involved the direct appeal to the supreme court of a trial court's suppression ruling and did not involve the trial court's authority to override a preliminary order. Thus, employer's reliance is misplaced.

### C. Good Cause

We also reject employer's contention that the Panel improperly inferred the good cause necessary to accept the posthearing depositions. Claimant's expert was not under subpoena at the time of the hearing. Thus, his unavailability did not, by itself, establish the requisite good cause. *See* Dep't of Labor &

Employment Rule VIII(C)(2)(c)(2), 7 Code Colo. Regs. 1101–7. Nevertheless, we consider the totality of the circumstances more than sufficient to provide the good cause necessary for the ALJ's order.

The order is affirmed.

Judge STERNBERG * and Judge HUME * concur.